## SINNETT v. MOLES ET AL.

1. **Taxation:** IN AID OF RAILROAD: ELECTION: FRAUDULENT REPRESENTATIONS. When the electors of a township were induced by fraudulent representations to vote a tax to aid in the construction of a railway, the collection of the tax could not be enforced.

2. **Injunction:** WHEN DISSOLVED ON ANSWER ALONE. A preliminary injunction will not be dissolved upon the filing of an answer which denies all the equities of the bill:
   1. Unless the denial be made upon the personal knowledge of the defendant;
   2. Unless it be of a character entitling it to equal credit with the affirmation of the bill;
   3. Unless it leave the mind of the court free from reasonable doubt whether the equities of the bill are sufficiently answered;
   4. When relief is sought by an injunction against fraud, which is the gravamen of the bill.

3. ———: DISCRETION: PRACTICE. In continuing or dissolving an injunction, the court exercises a *legal* discretion subject to review in an appellate tribunal.

4. **Estoppel:** FRAUDULENT REPRESENTATIONS. The fact that the work on a railroad had been performed and money expended without objection from the tax payers, would not estop them from subsequently denying the validity of a tax voted to aid in its construction, upon discovering that the vote had been procured by fraudulent representations.

COLE, J., dissenting, and DAY, J., concurring without determining (1) and (2) *supra*.

### *Appeal from Muscatine District Court.*

WEDNESDAY, DECEMBER 17.

ACTION in chancery to enjoin the collection of a five per cent railroad tax, voted by the citizens of Bloomington township, Muscatine county, under the law of 1870, to aid the building of the Muscatine Western Railroad. One hundred and thirty other persons are joined with Sinnett, as plaintiffs. S. G. Stein and J. B. Dougherty, the first president, and the second treasurer of the railroad incorporation, organized to build the road mentioned, are made defendants.

The petition alleges that the electors of the township voted the tax in question, to aid the incorporation named in building

a first class road from the city of Muscatine to the Missouri river, and to be expended in Bloomington and Lake townships, Muscatine county, and "that for the purpose of procuring aid of said township, said railroad company, by itself, its officers and agents fraudulently pretended to the electors, that the company had arranged with eastern railroad companies, to have a railroad built to the eastern bank of the Mississippi river, opposite the city of Muscatine in said township, and to build a bridge over said river to connect with the Muscatine Western Railroad, and had arrangements to procure aid, and has the financial ability, and would build said road to the Missouri river promptly, all of which representations were false and fraudulent;" that the Muscatine Western Railroad Company caused a petition to be prepared and circulated for the signatures of tax payers, which was presented to the township trustees, and upon which the election was ordered; that many of the electors, believing the fraudulent representations aforesaid, were induced thereby to sign said petition; that one-third of the resident tax-payers did not sign the petition, and the railroad company procured the signatures of residents of other States and townships; that the representations and inducements aforesaid so operated upon the election of the township that the tax was voted; many relying upon them refrained from voting against the tax, and others voted for the proposition because of their belief in the truth thereof; that the construction company which did all the work that was done by the corporation was composed almost exclusively of members of the railroad company, and had full knowledge of the false and fraudulent representations aforesaid, and after the election fraudulently procured the assessment to be raised, whereby the tax was made one-fifth greater. There are other charges of fraud in regard to the adoption of the proposition to levy the tax voted by the electors, as that the railroad company deceived the trustees as to the character of the signers to the petition, etc., etc. The petition charges that the railroad company has transferred its road to the Burlington, Cedar Rapids & Minnesota Railroad Company, and that the stock of the first named corporation has been transferred to the last named, or its stock-holders, and

thereupon plaintiffs charge the Muscatine Western Railroad Company has ceased to exist. The incorporation building the road being entitled to receive under the law, from the tax one-half the amount it has expended, it is charged in the petition that the company has been paid as much as it is lawfully entitled to receive; that the statements filed by the company, showing the amount expended are false; that the B., C. R. & M. R. R. Co., has entered into no obligation or agreement to build the road to the Missouri river, but has made it a branch of its own road, and the original project has been permanently abandoned. The petitioners aver that the alleged frauds were unknown to them, until after the work performed by the railroad company was done. There are other allegations in the petition, but as they are not involved in the points ruled in the opinion they are not set out.

Upon this petition a preliminary injunction was allowed.

The defendants answered the petition; Moles denying any knowledge sufficient to form a belief as to the alleged frauds.

The defendants deny each allegation of the petition as to the fraud alleged and false statements of the railroad company and of its agents. Among other matters shown in the answer, it is averred that seventeen of the plaintiffs voted for the tax, and a large number of them voted against it. Those of plaintiffs voting for the tax, it is claimed, are estopped thereby to deny its validity.

After answer defendants moved to dissolve the injunction, basing the motion on the bill and answer, on the ground that there is no equity in the petition, and that the charges of fraud and other matters whereon the claim for relief is founded, are fully denied in the answer. This motion was sustained, and the injunction was dissolved, and judgment, in the sum of $75 for damages, was rendered against plaintiffs. From this ruling and judgment they appeal to this court.

*Edmonds & Ransom, Rush Clarke,* for appellants.

*Cloud & Broomhall, Cook, Richman & Bruning, Richman & Carskadden,* for appellees.

BECK, CH. J.—Many questions presented and discussed in the argument of counsel, in the view we take of one branch of the case, need not now be considered by us. In our opinion the charges of fraud made in the petition are of such a character as to defeat the right of defendants to collect and receive the tax, if they be established and are not sufficiently denied by the answer to authorise the dissolution of the injunction thereon.

I. It is charged that the signatures to the petition upon which the trustees ordered the vote, were, in many instances, procured by fraudulent representations whereby voters were induced to sign the same; that the election was ordered because of false representations made to the trustees, and finally through like fraudulent and false statements, and misrepresentations of fact, the proposition was adopted at the election, the electors being deceived and induced thereby to vote for the proposed aid to the railroad.

1. TAXATION: in aid of railroad: election: fraudulent representations.

It may be stated as a general proposition, that every obligation, whereby one may become bound to do an act, is annulled and defeated, if it be obtained by the fraud of the party asking to enforce it, or for whose benefit it is sought to be enforced, or with his knowledge and consent. "Fraud avoids a contract *ab initio* both at law and in equity, whether the object be to deceive the public or third persons, or one party endeavor to cheat the other. For the law will not sanction dishonest views and practices, by enabling an individual to acquire, through the medium of his deception, any right or interest." Chit. Contr. 678. All transactions of men are rendered invalid by fraud, and courts will enforce no claims based thereon.

Defendant's counsel insist that the charges of fraud are immaterial, because the representations which are alleged to have been false, did not become a part of the conditions of the vote of the people to aid the construction of the road; in other words, that they are merely matters of negotiation, or contemporaneous stipulations, or terms not incorporated in the proposition voted upon, and as that constitutes the contract by the electors and the incorporation building the road, these repre-

sentations alleged to have been false constitute no part thereof. The position both of fact and law may be admitted, and yet it does not follow that it is of any avail for defendants, for it is not applicable to the case made by the record before us. It is not claimed that the matters which were fraudulently misrepresented constituted a part of the proposition, but simply that they were used by the railroad company as inducements, whereby signatures to the petition were obtained and the electors were induced to vote for the aid. In other words, the electors were by fraud induced to adopt the proposition, that is, they became bound by the contract through fraud, being induced to consent thereto by the misrepresentation of those for whose benefit the defendants seek to collect the tax. The terms of the contract, the proposition voted for, may be unobjectionable, but its submission to a vote of the people was procured, and plaintiffs and others were induced to vote for the tax, by the false statements and fraudulent misrepresentations of the railroad company and its agents. This fraud enters into and invalidates the contract, will defeat it in a court of law, and is ground for annulling it in chancery. These principles are familiar, and for their support need neither discussion nor the citation of authority.

II. It is a familiar rule that upon the equity of a bill being fully and explicitly denied by the answer, a preliminary injunction allowed thereon will be dissolved. But there are exceptions to the rule, and cases to which it is not applied.

2. INJUNCTION: when dissolved upon answer alone.

The denial of the equities shown in the bill must be upon the personal knowledge of the defendant; it will not be sufficient if based upon mere information and belief. The answer must be of such a character as to entitle it to as much credit as the affirmation of the bill, in order to authorize the dissolution of an injunction thereon. *Morris Canal & Banking Co. v. Jersey City*, 3 Stockt., 13. The answer must be a satisfactory denial of the equities of the bill to justify the dissolution of an injunction. *Thomas v. Horn*, 14 Geo., 481. So if the statements of the answer are such as to leave the mind of the court in reasonable doubt whether the equities are

sufficiently answered, the injunction ought not to be dissolved. *Monroe v. McIntire,* 6 Ired. Eq., 65; *James v. Lemly,* 2 Ired. Eq., 278; *Miller v. Washburn,* 3 Ired. Eq., 161.

It would appear that the answer must be of such a character as to completely counterbalance the case made by the bill, and leave nothing to inference and presumption. In other words, the denial must be direct, by a party who has personal knowledge of the facts he denies; in such a case, his statements being entitled to as much credit as those of plaintiff in the petition, it may be fairly said that the court, without a doubt in its mind, ought to regard the equities of the petition answered. But such would not be the result if an answer is based upon hearsay, or made by a person who, from the nature of the case, could not have had personal knowledge of the matter upon which his denial is based.

When relief is sought by an injunction against fraud, which is the *gravamen* of the bill, the court will continue the injunction though the defendant has fully answered the equity set up. *Dent v. Summerlin,* 12 Geo., 5.

This rule ought certainly to apply when the denial is by a party claiming benefits under fraudulent acts, though not a party thereto, yet charged with notice thereof, and at the same time not showing personal knowledge upon the subject in his answer, and when the person charged with having committed the fraud is not a party to the action, or has not answered thereto. Direct evidence of fraud is seldom attainable, or at least is often unattainable. This is peculiarly so of fraudulent intentions and designs, as they rest, ordinarily, concealed in the breast of the guilty party. In such cases it is established by circumstances; like some forces and substances in nature, its existence is determined by its manifestations. Upon manifestations the charge of fraud may well be made in a bill; the denial of its existence by one whose knowledge is confined to, and opinion is based upon, such manifestations only, it is evident does not refute the charge, for of its very existence beyond such evidence he is ignorant, and of the force and effect of evidence he can give to the court no opinion or information. While these remarks are peculiarly applicable to

frauds which are secret in their character, yet the reasons upon which they are based require the rule to be extended to all cases where false and fraudulent acts and statements charged in a bill are not answered by those having personal knowledge of the matters by the denial of the acts and representations themselves, or their false and fraudulent character.

The answer of defendants is within these exceptions to the general rule above stated. Moles neither admits nor denies the allegations of the bill, having no information of the matters sufficient to justify a belief thereon. The other defendants deny positively the allegations of fraud, and all other disputed facts set out in the bill. But it nowhere appears that they have any personal knowledge whatever of the matters constituting the foundation of the relief asked by plaintiffs. On the contrary it is fair to presume from the facts developed, both in the bill and answer, that whatever knowledge they have upon the subject is based upon hearsay, and derived possibly from those who committed the acts complained of as fraudulent. There may be a few material facts stated in the answer to which this remark is not applicable.

While the parties answering are officers of the M. W. R. R. Co., and were, probably, at the time of the transaction complained of, it is not charged that the misrepresentations were by them made, nor do they show directly or indirectly in their answer such a state of facts upon which it would be fair to presume that they were personally cognizant of the matters in question.

In our opinion the answer is not a satisfactory denial of the equities of the bill, and is not sufficient to remove reasonable and well founded doubts which should have existed in the mind of the court below upon that point.

III. While the continuing or dissolving of an injunction 3. ——: discretion: practice. rests in the sound discretion of the court originally passing upon the question, yet this is a legal discretion, and if abused or exercised upon insufficient grounds will be reversed by an appellate court. *De Godey v. Godey*, 39 Cal., 157; *Conolly v. Cruger*, 40 Geo., 259. In our opinion the District Court was not authorized to dissolve the injunction upon the answer filed in the case.

The following authorities support the doctrines above announced: *Attorney General v. Oakland Co. Bank,* 1 Walker's Ch'y, 90; *Ward v. Bokkelen,* 1 Page Ch'y, 100; *Irick v. Black,* 2 C. E. Greene, 189; *Huffman v. Hummer,* Ibid., 263; *Firmstone v. DeCamp,* Ibid., 309; *Society, etc., v. Low,* Ibid., 19.

IV. The position taken by defendants' counsel that plaintiffs, upon the showing made by the bill and answer, are

4. ESTOPPEL: fraud: ignorance of.

estopped to deny the validity of the tax on the grounds that the work upon the railroad was done and money expended therefor, all of which were well known to plaintiffs before the bill was filed, or any objection made by plaintiffs, and that many of plaintiffs voted at the election, and others of them voted for the tax, cannot be sustained. Plaintiffs aver that the frauds complained of were not known to them until after the work was done. This averment of fact is not overthrown by a sufficient denial in the answer. It is very plain that the acts of a party, whatever they may be, would not estop him to deny frauds of which he was at the time ignorant, when claims under such frauds are attempted to be enforced by the guilty party or one having notice thereof. Nothing further need be said on this point.

It is proper to remark that no objection is made by defendants, on the ground that the railroad company or others are necessary parties, and are not joined as defendants. No question, therefore, which might arise on this state of the record is before us for consideration. The other questions we refrain from passing upon, as those above determined are decisive of the case, and the views above announced demand a reversal of the judgment of the District Court.

REVERSED.

COLE, J., dissenting.

DAY, J.—Without determining that fraud practiced upon an elector, whereby his vote is secured, will vitiate an election, or whether an answer in chancery which denies positively the allegations of the petition, must also affirmatively show that the defendant denying has personal knowledge respecting the

.matter alleged, I concur in the result of the foregoing opinion upon the following grounds:

The petition alleges facts showing that fraud was practiced in securing the submission of the question of taxation to vote. The fact, if proved, in my opinion would invalidate the election.

When the *gravamen* of the bill, as in this case, is fraud, a temporary injunction will not be dissolved upon an answer denying the facts and circumstances alleged in the petition, but it will be continued until the hearing on the merits.

Upon these grounds I concur in the opinion of the Chief Justice.