JOHNSTON v. THE C., M. & ST. P. R. CO. ET AL.

1. **Railroads**: OPERATIONS OF: INJUNCTION. The "operations of a railway" as referred to in section 3391, Code, mean the operations of a constructed railway, and not the operations of a railway company in constructing a railroad.

2. **Injunction**: DISSOLUTION OF: FRAUD. When relief is sought by an injunction against fraud, which is the *gravamen* of the bill, the court will continue the injunction, though the defendant has fully answered the equity set up.

3. **Railroads**: POWER TO CONDEMN PROPERTY FOR USE. The statute limits the amount of land, which may be taken by a railroad company under condemnation proceedings, to 100 feet in width, except: *First,* on account of wood and water stations; *Second,* where a greater width is necessary for excavation, embankment, or depositing waste earth.

*Appeal from Tama District Court.*

FRIDAY, JUNE 9.

The plaintiff filed in the Tama District Court, a petition stating his cause of action as follows:

"Par. 1. That he is the absolute owner in fee simple of Lot No. 13, in Block 7, in Iuka (now Tama City) Tama County, Iowa, and that there is a valuable dwelling house on said lot, and other valuable improvements appurtenant to said dwelling house on said lot.

"Par. 2. That the Chicago, Milwaukee & St. Paul Railway Company has located its railway south of said lot in such a manner, that the center line of the main track thereof will run in an easterly and westerly direction about 100 feet south of said lot, and has given notice to plaintiff that it desires and has appropriated the whole of said lot for wood and water station purposes, and that the commissioners appointed by the sheriff of Tama County will proceed to appraise and assess the damages which plaintiff will sustain by reason of the appropriation of said lot by said company for said purpose, at two o'clock p. m., of the 18th day of August, 1881, in the

manner provided by law for the assessment of damages sustained by owners of land taken by railway corporations for right of way and other lawful purposes.  Said notice was in the usual and legal form, and notified plaintiff that said company had appropriated the lot in question for wood and water station purposes, and that the commissioners appointed by the sheriff of said county would, on August 18th, 1881, proceed to assess the damages caused by said appropriation.

"Par. 3.    That said railway company has already secured a belt or a strip of land 100 feet in width, lying wholly south of said lot for the right of way for its railway, through the center of which strip the center line of the main track of its railway will run, and neither the whole or any part of said lot is necessary for right of way for said railway, nor is there any need at or near said lot for a greater width than 50 feet on each side of its center line for excavation, embankment or depositing waste earth, nor is it pretended that said lot is desired or needed for any such purpose.

"Par. 4.    That it is pretended by said railway company in said notice, that said lot is desired and has been appropriated for wood and water station purposes, whereas the truth is that no part of said lot has been appropriated by said company for any purpose, and that it is *not* desired for wood and water stations by said company, nor for any other purpose for which railway corporations, under the laws of Iowa, may take private property without the consent of the owner thereof. That plaintiff has never consented to the taking of said lot by said company for any purpose.  That the truth is that said company desires said lot wholly for elevator or warehouse purposes, or for the enlargement of its depot grounds of said town.    That the situation of said lot is such that it cannot conveniently, properly or possibly be used for a wood and water station by said company, and that the pretense that it is desired for such purpose is made, fraudulently and only, for the purpose of giving the semblance and color of legality to the attempt by said company to obtain said lot against the

will of plaintiff, under the proceedings of appraisement aforesaid.

"Par. 5. That unless restrained by injunction, said company will proceed to consumate said fraud and will have said appraisement made, and said sheriff and commissioners will proceed to make the same, and the said company will then, if the report of said commissioners is satisfactory to it, pay the damages found by said commissioners to said sheriff and file said report in the office the of recorder of Tama county, thereby creating a cloud upon plaintiff's title to said lot, and said company will, unless restrained by injunction, proceed to take possession of said lot, remove the improvements therefrom and cause irreparable injury to plaintiff. That plaintiff has no adequate remedy at law as against said wrongs and injuries threatened by said company, and praying the issuance of an injunction perpetually enjoining and restraining said company and the other defendants, from proceeding with said appraisement of damages, and restraining the sheriff from receiving from said company the award of the commissioners under such appraisement, and restraining the recorder from receiving or filing for record in his office the report of said commissioners in regard to said lot, also restraining said company, its agents, officers and employes from taking possession of said lot under and by virtue of such appraisement, and for other equitable relief." This petition was presented to the Hon. John Shane, District Judge, and upon his order an injunction issued as prayed. On September 27th, 1881, the defendants filed their answer in which they "admit allegations in paragraphs one and two, and all of paragraph three except the allegations, 'and neither the whole nor any part of said lot is necessary for right of way for said railway, nor is there any need at or near said lot for a greater width than 50 feet on each side of its center line for excavation, embankment, or depositing waste earth, the truth of which allegation defendants have neither knowledge nor information sufficient to form a belief; admit that said lot is desired and has been

appropriated for wood and water station purposes; admit
that plaintiff has never consented to the taking of said lot by
said railway company for any purpose; admit the truth of
the allegations of the fifth paragraph of petition, except the
allegation of fraud therein alleged, which is expressly denied.
Also the allegation that plaintiff would suffer irreparable in-
jury and that plaintiff has no adequate remedy at law, which
allegations are expressly denied. And said defendant, the
Chicago, Milwaukee & St. Paul Railway Company, for itself
says, that it is engaged in the construction of a railway from
Marion, Linn County, Iowa, in a westerly direction to Coun-
cil·Bluffs, which passes through the town of Tama City, and
that said railway, when constructed, will form a part of a
through line of railway from the cities of Chicago and Mil-
waukee to said Council Bluffs, that said defendant has located
a wood and water station at Tama City, Iowa, on said line of
railway, and that said station is requisite, not only for the
transaction of the business of said company, but for the ac-
commodation of the people of said Tama City and the country
tributary thereto; that said defendant has located the grounds
necessary and requisite for said wood and water station, and
that the lot in question is a part of the said grounds as se-
lected, taken and appropriated by said company for that pur-
pose, and that said lot is necessary and requisite for the uses
and purposes of said wood and water station, and for the op-
eration and proper management of its railway, and that said
defendant·is seeking to condemn the same for the uses and
purposes of said wood and water station as provided by the
statutes of Iowa. And defendants deny each and every al-
legation in said petition contained, which has not been ex-
pressly admitted, and praying dissolution of the injunction,
and that defendants be dismissed with their costs and other
equitable relief." Said answer was duly verified.

Upon the filing of this answer the defendants moved the
court to dissolve the injunction. The court overruled the
motion. The defendants appeal.

*Struble & Kinney, Hubbard, Clark & Dawley* for the appellants.

*Ebersole & Willett,* for the appellee.

DAY, J.—I. It is claimed the injunction should have been dissolved, because it was issued without notice to the defend-

1. RAIL-
ROADS: op- ant company. Section 3391 of the Code pro-
erations of:
injunction. vides: "An injunction to stop the general and ordinary business of a corporation, or the operations of a railway, or of a municipal corporation * * * * * * * can only be granted upon reasonable notice of the time and place of the application, to the party to be enjoined." It is claimed that the injunction in question stops the operations of a railway. We think the operations of a railway, refer to the operations of a constructed railway, and not to the operations of a railway company in constructing a railroad. It is said that this construction renders the phrase *operations of a railway* unmeaning, because it would all be embraced in the words *general and ordinary business of a corporation,* which precede. It is a fact well known, however, that railways are sometimes operated by individuals.

II. It is claimed that the injunction should have been dissolved, because the answer denies all the material allegations

2. INJUNC-
TION: disso- of the petition. The petition alleges that the de-
lution of:
fraud. fendant fraudulently, pretends that it desires said lot for a wood and water station, only for the purpose of giving the semblance and color of legality to the attempt to obtain said lot under proceedings of appraisement. The plaintiff, therefore, seeks relief on account of the alleged fraud of defendant. "When relief is sought by an injunction against fraud, which is the *gravamen* of the bill, the court will continue the injunction though the defendant has fully answered the equity set up." *Dent v. Summerlin,* 12 Geo., 5; *Sinnett v. Moles,* 38 Iowa, 25; *Stewart v. Johnston & Co.,* 44 Id., 435; *Brigham & Ward v. White,* 44 Id., 677.

III.    The appellants in their argument say: " The central question involved in this litigation is this: Can railway com-

3. RAILROADS: power to con-demn prop-erty for use.

panies condemn such additional real estate outside of their right of way of one hundred feet, as may be necessary to supply them with grounds for passenger stations, freight, and engine-house, warehouses, elevators, stock-yards, and such other appliances as may be necessary for the convenient use of their railways? The power of condemnation for these purposes at a wood or water station, is affirmed and asserted on the part of appellant. It is denied on the part of the appellee." In another part of their argument appellants go even further and insist that at any railway station the company may condemn lands, outside of the right of way of one hundred feet, for depots, warehouses, elevators, stock-yards, and the like.

The question presented involves a construction of section 1241 of the Code, which provides: " Any railway corporation organized in this State  *   *   *  may take and hold, under the provisions of this chapter, so much real estate as may be necessary for the location, construction, and convenient use of its railway,  *   *   *   * ;  *the land so taken otherwise than by the consent of the owners, shall not exceed one hundred feet in width, except for wood and water stations, unless where greater width is necessary for excavation, embankment, or depositing waste earth.*"

The construction contended for by appellants is, in our opinion, wholly inadmissible. It ignores entirely the limitation in the statute that the land taken otherwise than by consent of the owner, shall not exceed one hundred feet in width. To render possible the construction insisted upon by appellants, the statute should have stopped where the portion indicated above in italics begins. The statute seems to us so plain as scarcely to be susceptible of construction. If it had stopped just preceding the word *except*, it is very clear that the company would have been limited for purposes of condemnation, to a strip of land one hundred feet in width. It

is equally clear that the company is now so limited for all purposes but those embraced in the exception. What, then, does the exception embrace? It includes wood and water stations, and places where greater width is necessary for excavation, embankment, or depositing waste earth. Appellants substitute the word *at* instead of the word *for*, and insist that *at* a wood and water station the company may condemn, outside of the one hundred feet, all the lands necessary for passenger stations, freight and engine-house, warehouses, elevators, stock-yards, and other appliances. In another portion of their argument they insist that a wood and water station is *ex vi termini*, a railway station, and that the statute means precisely what it would if the words *wood and water* were eliminated from it. We do not feel ourselves at liberty to use such freedom with the statute. The statute furnishes no justification for such construction. The statute evidently limits the amount of land which may be taken under condemnation proceedings to one hundred feet in width, except, *First*. For, that is, in advantage of, for the sake of, on account of, wood and water stations. *Second*. Where a greater width is necessary for excavation, embankment, or depositing waste earth. It is claimed, however, that this construction renders useless the provision of section 1242, authorizing a railway corporation to take and hold additional real estate at its water stations, for the purpose of constructing dams and forming reservoirs of water to supply its engines. Section 1241 of the Code was enacted in 1853. It was found that frequently a sufficient supply of water could be obtained only by constructing dams across small streams and forming reservoirs. This would, of necessity, to some extent, flood adjoining property. It was considered doubtful whether this could be done under section 1241. To remove this doubt and clearly confer the power to construct such reservoirs, section 1242 was enacted in 1868. It is not inconsistent with the construction which we have placed on section 1241. The appellants, in support of their position, have cited and relied upon a number of

cases from other States, all of which arose under·statutes essentially different from the one under consideration. In our opinion, the court did not err in refusing to dissolve the injunction.

AFFIRMED.