T. D. SWAN ET AL., Appellees, v. THE CITY OF INDIANOLA
ET AL., Appellants.

**Injunctions:** TEMPORARY WRIT: DISCRETION: REVIEW. While the trial
1 court is vested with much discretion in the matter of granting
or continuing a temporary injunction, still this discretion is a
legal one and if not properly exercised the court's action will be
reversed on appeal.                                           •

**Same:** DISSOLUTION. As a general rule a preliminary injunction will
2 be dissolved where all the material allegations of the petition
have been fully and satisfactorily denied in the answer; but
where the basis of the action is fraud, or it is apparent that by a
dissolution of the injunction a party will lose all benefits to
accrue from final success in his suit, the rule is otherwise.
However, if upon the entire record nothing but questions of law
are involved, and it appears the writ was improvidently issued
it will be dissolved on appeal.

**Municipal corporations:** PROCEEDINGS: RECORD: DUTY OF CITY CLERK:
3 DEPUTY. The duties of a city clerk are purely ministerial; and
while the statute provides that he will attend council meetings
and make a record of the proceedings his presence is not indis-
pensable to the transaction of business, but the council may ap-
point a clerk *ex tempore,* or, the clerk may deputize another
to perform the service; and when this is done and the minutes are
corrected and approved by the council they become the records
of the council, and when attested by the clerk are as valid as if
regularly taken by him in the first instance.

**Municipal corporations:** POWERS OF COUNCIL: JUDICIAL INTERFERENCE.
4 A city council may act in an administrative as well as a legisla-
tive capacity; and in so far as its acts are legislative its motive
or that of its members will not be inquired into by the courts,
unless perhaps .when oppressive or unreasonable. And where
an ordinance is one expressly authorized by statute the court
will not interfere with the discretion of the council.

**Same:** MUNICIPAL CONTRACTS: MOTIVES OF COUNCILMEN: FRAUD.
5 Where an ordinance, by-law or resolution of a city council is
contractual in character, or, where the city acts as trustee or
agent, the motives of councilmen may be enquired into; and where

the results are obtained by fraud the contract will be set aside the same as when made between natural persons.

**Same:** JUDICIAL REVIEW. Courts are slow to condemn an ordinance expressly authorized by statute; but if passed under a general welfare clause or some implied power, it will be condemned if arbitrary, unreasonable or oppressive.

**Municipal contracts:** DEBT LIMIT: INJUNCTION. The fact that a city is indebted to its constitutional limit is not ground for enjoining of the letting of a contract.

**Same:** INJUNCTION. A city council is authorized by statute to determine the kind of material to be used in the paving of streets, and having selected the same prior to any alleged improper influences an injunction will not lie to restrain the letting of a contract for the work because the material selected is more expensive than some other, or more expensive than property owners think should be used.

**Municipal authority':** PUBLIC IMPROVEMENT: DISCRETION: JUDICIAL INTERFERENCE. Courts will not undertake to control the discretion of a city council by determining whether it is advisable for a city to improve its existing utilities before proceeding with others.

**Municipal contracts:** PAVING: FRAUD: EVIDENCE. To justify an injunction restraining a city council from making a contract for a public improvement on the ground of fraud, the fraud must be of such a character that unless the court interferes injury will result to some one; a mere showing from which fraud might be inferred is not sufficient: As where the council took a junketing trip for the purpose of inspection at the invitation and expense of the successful bidder, where such bidder had no monopoly on the materials or supplies to be used, and was one of several competitors with equal opportunity to obtain the contract.

**Same:** RIGHTS OF PROPERTY OWNERS: ADEQUATE LEGAL REMEDY: INJUNCTION. Where fraud has entered into the bidding and letting of a municipal contract property owners subject to assessment have an adequate remedy at law in their right to resist the enforcement of the assessment against their property, or a recovery for the value of the improvement, and are therefore not entitled to an injunction restraining the making of the contract.

*Appeal from Warren District Court.*—HON. J. D. GAMBLE, Judge.

Thursday, June 3, 1909.

Suit in equity to enjoin defendants from entering into a contract to pave certain streets in the city of Indianola. A restraining order was issued without notice, and defendants appeared and filed a motion to dissolve it. This motion was denied, and at the same time a temporary writ of injunction was issued restraining the city from entering into or completing the contract. The defendants appeal.—*Reversed* and *remanded.*

*H. H. McNeil, Henderson & Henderson,* and *Bowen, Bremner & Alberson,* for appellants.

*W. H. Berry,* for appellees.

Deemer, J.—Plaintiffs are residents, taxpayers, and abutting owners of property in defendant city, which streets the said city is proposing to pave. Defendants are the city, its mayor, the members of the city council, and the city treasurer. The action is to enjoin defendants from entering into a contract for the pavement of certain streets in said city and from taking any other steps looking toward the pavement of the streets. It is claimed: (1) That in all the preliminary proceedings taken with reference to the pavement of the streets the council was not properly organized or authorized to do business, for the reason that the regular clerk was not present at any of the meetings and did not keep the minutes thereof, and that the council did not fill the vacancy by electing a *pro tempore* clerk as provided by law; (2) that the city council was guilty of fraud and conspiracy in ordering and letting the pavement; (3) that the ordinance is unreasonable, unfair, and oppressive, in that the kind of pavement adopted is expensive and not adapted to small cities such as the defendant and an unwarranted burden upon property

owners; (4) that the contract will involve the city in debt
beyond its constitutional limit; and (5) that the city is in
need of a sewerage system which should be put in before the
pavement is laid, and that its water supply is inadequate
and should be enlarged before any pavement is put in. The
trial court granted a restraining order upon the allegations
of the petition without any notice to the defendants.
Thereafter defendants appeared, filed answer, and a mo-
tion to dissolve the restraining order. This motion was
submitted upon the testimony adduced by either side, and
the trial court refused to dissolve the order and granted a
temporary writ of injunction. At the same time defend-
ants filed an amendment to their answer and asked the
court to hear further testimony before granting the tem-
porary writ of injunction. This the trial court refused
to do, but, in response to said request, made the following
order:

Without expressing any opinion as to the merits of
the cause on any of the points raised by any of the plead-
ings, I am of the opinion: That this matter should be
continued to the final hearing of the cause on its merits;
that the motion to dissolve is premature, and in effect 'is
an attempt to obtain by summary action a decision as to
the equity of the case,' and should be overruled and denied.

I. It is provided in section 4101 of the Code that an
appeal may be taken from an order granting or refusing
to dissolve an injunction, and while, broadly speaking, the
matter of granting or continuing a tem-
porary writ rests largely in the sound dis-
cretion of the trial court (*Walker v. Stone,*
70 Iowa, 103), yet this discretion is a legal
one, and, if not based upon sufficient grounds, will be re-
versed upon appeal. *Sinnett v. Moles,* 38 Iowa, 25;
*Stewart v. Johnston,* 44 Iowa, 435; *Fuson v. Conn. Ins.
Co.,* 53 Iowa, 609.

1. Injunction
temporary
writ: dis-
cretion:
review.

The general rule is that, where all the material allegations of the petition for an injunction are fully and satisfactorily denied in the answer, the preliminary in-
2. SAME: junction, if one has been allowed, will be
dissolution. dissolved. *Walker v. Stone, supra; Car-rothers v. Newton Co.,* 61 Iowa, 681; *Russell v. Wilson,* 37 Iowa, 377. Of course there are exceptions to this rule, as where fraud is the gravamen of the action, or it is apparent that by a dissolution of the injunction the party will lose all benefit to accrue from final success in his suit. *Johnston v. Railroad,* 58 Iowa, 537; *Fargo v. Ames,* 45 Iowa, 494; *Stewart v. Johnston,* 44 Iowa, 435; *Wingert v. City of Tipton,* 134 Iowa, 97; *Sinnett v. Moles,* 38 Iowa, 25. But if upon the entire record nothing but questions of law are involved, and it appears that the injunction was improvidently issued, it will be dissolved upon appeal. *Burlington Co. v. Dey,* 82 Iowa, 312; *Gossard v. Crosby,* 132 Iowa, 155. The trial court bottomed its ruling upon *Wingert v. City, supra;* but a reading of that case will show that defendants upon a motion to dissolve, supported by affidavits only, were held not entitled to an investigation of the merits of the case. It was there held that the motion amounted to nothing more than an attempt to obtain by summary action a decision upon the merits of the case, and that this should not be permitted. Nothing there said runs counter to the views above expressed, which are well fortified by authority.

With these rules in mind, we come now to the question of the correctness of the ruling on the motion to dissolve and of the order granting the temporary writ of injunction. The answer filed by defendants denied most of the allegations of the petition, and there is little or no dispute regarding the facts as appears from the testimony adduced. These are the material facts as shown by the record: On the 13th day of July, 1908, one of the members of the city council of defendant city presented a reso-

lution directing the solicitor and engineer to prepare a resolution of necessity for the paving of certain streets, being the ones in controversy in this action. Pursuant thereto a resolution was prepared and submitted to the council at a meeting held August 17, 1908. A motion was then made that the paving be of asphalt. Thereupon another member of the council moved to amend by substituting creosoted blocks in place of asphalt. This amendment was carried, and September 25th was fixed as the date for the final consideration of the resolution of necessity. At a meeting held on September 25th, the council heard objections to the proposed resolution offered by various property owners and postponed further consideration until the following Monday. On Monday, the 28th of September, the council again met pursuant to adjournment and duly passed the resolution of necessity; the vote being six for and one against and one councilman absent. At this time it was proposed to use four-inch blocks with a six-inch concrete foundation. At a regular meeting of the council held on October 12, 1908, one Morrison, representing the Kettle River Stone Quarries Company, who in some manner heard of the action of the council, appeared before that body and extended an invitation on behalf of his company to the members of the council to accompany him to Minneapolis and Des Moines and to the plant of his company at Sandstone, Minn., to examine the creosote block pavement there in use and that manufactured by his employer at its expense. This invitation was publicly extended and as publicly accepted, and four members of the council and the city solicitor visited the places named at the expense of the company, and upon their return made a favorable report regarding the use of the blocks. They concluded and recommended, however: That a straight curb be used, instead of a combined curb and gutter; that a three-inch block be used, instead of a four-inch; and that the concrete foundation be five inches, instead of six. This

report was publicly made, and the recommendations as we understand it adopted. Thereafter and on November 19, 1908, the city council passed another resolution declaring the necessity of paving, and, after fixing the width of the paving, January 5, 1909, was fixed as the day for the consideration of the resolution and for the hearing of objections thereto. Notice thereof was duly given, and at the meeting in January objections to the resolutions were heard and considered, and the resolution finally adopted by unanimous vote. Afterward plans and specifications were prepared by the city solicitor and engineer, and at a meeting held on January 11, 1909, a resolution was passed ordering the construction of the improvement. The clerk having advertised for bids according to law, the council again met on February 8th, opened the proposals and bids, and, after hearing objections, accepted that one filed by the Kettle River Quarries Company; it being the lowest one presented. Five bids were presented by various parties located at Des Moines, Indianola, Iowa City, Shenandoah, and Minneapolis, Minn. The accepted bid fixed the price of paving at $2.61 per square yard, of the curb thirty-five cents per linear foot, and of extra grading at thirty-five cents per cubic yard. At this point this action was brought to enjoin the letting of the contract and for other relief.

II. Having already stated in a general way the contentions made for appellant, we now go to the exact points relied upon. Mrs. Cora Lee had been duly elected clerk of the defendant city, and in July of the year 1908 it was discovered that she was ineligible under section 643 of the Code. She thereupon resigned, and her husband, Arthur Lee, was elected in her stead, with the understanding that his wife should assist him. It was the desire of the council that Mrs. Lee should keep the notes of the meeting and should write up the records. Lee himself

3. MUNICIPAL CORPORATIONS: proceedings: record: duty of city clerk: deputy.

was not present at any meeting of the council above referred to, but his wife was, and she kept notes of the meetings, which were transcribed into and upon proper books and signed by Arthur Lee, clerk, in his own handwriting. At each meeting after the several records were transcribed, the minutes of the preceding meeting were read and approved by the council. Section 659 of the Code provides that clerks shall attend all meetings of the city council and make accurate records of the proceedings had, and section 668 provides that, in the absence of the clerk, the council shall appoint a temporary clerk from their own number, which appointment shall be entered of record. The clerk, however, is not a member of the council in making a quorum. He has no right to vote, and his duties are plainly ministerial. A council may act and has jurisdiction of any subject rightfully before it, although it has no clerk. Indeed, in the absence of a statute to the contrary, its proceedings in the absence of a record may be shown by parol. *Brown v. Webster City,* 115 Iowa, 511; *Barber Asphalt Co. v. Hunt,* 100 Mo. 22 (13 S. W. 98, 8 L. R. A. 110, 18 Am. St. Rep. 530). Generally speaking, when the duties of an office are purely ministerial, they may be discharged by a deputy. In other words, such duties may, in the absence of a prohibitory statute, be deputized; but, however, this may be, where the minutes, no matter by whom kept, are finally submitted to the council and by it approved or corrected and approved, they become the records of the council, and, when properly attested, as they were in this case, they are as valid as if taken in the first instance by the regularly appointed clerk. They are not in either event, perhaps, conclusive, but in such circumstances are at least *prima facie* correct. *Cady v. Ihnken,* 129 Mich. 466 (89 N. W. 72); *Hutchinson v. Pratt,* 11 Vt. 402. The validity of the proceedings are not affected because the regular city clerk was not present at the meetings.

III. The other points involve the validity of the acts of the council in passing the resolution of necessity, in selecting the material for the pavement, and in the

4. MUNICIPAL CORPORATIONS: powers of council: judicial interference.

proceedings immediately preceding the acceptance of the bid and the letting of the contract. These propositions present questions of law which have never been accurately determined by this court, and upon which there is some conflict in the decisions from other states. A city council may act not only in a legislative, but also in an administrative, capacity. In so far as its acts are legislative, the general rule is that its motives can not be inquired into. In this field it is as supreme as any other legislative body, save perhaps that it can not act oppressively or unreasonably. *Lacey v. City of Oskaloosa,* 121 N. W. 542; *Davis v. Anita,* 73 Iowa, 325; *State Center v. Barenstein,* 66 Iowa, 249; *Meyers v. R. R.,* 57 Iowa, 555. Of course, if the ordinance is one which is expressly authorized by statute, courts should not interfere with the discretion vested in the lawmaking body. Should they do so, their act would not be judicial, but purely an usurpation of legislative power. *Coal Float Co. v. Jeffersonville,* 112 Ind. 15 (13 N. E. 115). Again courts will not inquire into the motives of members of the Legislature in enacting laws, and this rule also obtains as to members of a city council in enacting ordinances. *Buell v. Ball,* 20 Iowa, 282; *Paine v. Boston,* 124 Mass. 486; *Soon Hing v. Crowley,* 113 U. S. 703 (5 Sup. Ct. 730, 28 L. Ed. 1145). There are some courts holding to a contrary rule, but they are in the minority, and we are not disposed to follow them. Of such courts are the following: Missouri, In *Kansas City v. Hyde,* 196 Mo. 498 (96 S. W. 201, 7 L. R. A. (N. S.) 639, 113 Am. St. Rep. 766); but compare *Morse v. Westport,* 136 Mo. 276 (37 S. W. 932). Kentucky, in *Shinkle v. Covington,* 83 Ky. 420. Our previous cases are in support of the rule above sug-

gested. *D. M. Gas Co. v. City,* 44 Iowa, 505; *Dewey v. Des Moines,* 101 Iowa, 416; *Hedge v. Des Moines,* 141 Iowa, 4.

However, if the ordinance, by-law, or resolution is contractual in character, or the city acts as trustee or agent, the motives of its councilmen may be inquired into, and, when the results are 'obtained or procured by fraud, will be set aside just as contracts between natural persons may be. *Seitzinger v. Tamaqua,* 187 Pa. 539 (41 Atl. 454); *Howard v. Olyphant,* 181 Pa. 191 (37 Atl. 258); *Weston v. Syracuse,* 158 N. Y. 274 (53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472). This view also finds expression in the following of our own cases: *Miller v. Webster City,* 94 Iowa, 162; *Kemp v. City,* 125 Iowa, 644; *Talcott v. City,* 134 Iowa, 113; *Dewey v. Des Moines, supra; Des Moines v. City, supra; Burlington v. Quick,* 47 Iowa, 222; *Coates v. Dubuque,* 68 Iowa, 560. See, also, *Field v. Barber Co.,* 194 U. S. 618 (27 Sup. Ct. 784, 48 L. Ed. 1142); *People v. Cregier,* 138 Ill. 401 (28 N. E. 812).

5. SAME: municipal contracts: motives of councilmen: fraud.

If an ordinance is passed pursuant to a statute expressly authorizing it, courts will be very slow to condemn it, even if they have the power to do so; but, if passed under a general welfare clause or by reason of some implied grant, they will be condemned if arbitrary, unreasonable, or oppressive. *Phillips v. Denver,* 19 Colo. 179 (34 Pac. 902, 41 Am. St. Rep. 230); *People v. Armstrong,* 73 Mich. 288 (41 N. W. 275, 2 L. R. A. 721, 16 Am. St. Rep. 578); *People v. Pratt,* 129 N. Y. 68 (29 N. E. 7); *Burg v. Railroad,* 90 Iowa, 106; *Meyers v. Railroad,* 57 Iowa, 555.

6. SAME: judicial review.

With these rules in mind, it is clear that the matter of the passage of the resolution of necessity and of all proceedings down to the letting of the contract, being

purely legislative in character, can not be attacked in
this proceeding.  The agent of the quarries
company did not appear upon the scene
until after the resolution of necessity had
been passed and the character of the material determined
upon.  Hence there could be no fraud down to that time.
Moreover, the fact that the city was indebted to its con-
stitutional limit is no ground for enjoining the letting
of the contract.  *Des Moines Co. v. Des Moines,* 44 Iowa,
505; *Searle v. Abraham,* 73 Iowa, 507.

7. MUNICIPAL
CONTRACTS:
debt limit:
injunction.

As the council had express authority to determine
the material to be used, and had in this instance selected
the same before any of the claimed improper influences
were used, an injunction will not lie because
this material was more expensive than some
other and more costly than the property
owners thought should be used.  This was purely a
matter within the discretion of the council, and its action
in this respect can not be held arbitrary, unjust, or un-
reasonable.  See Code, section 810, which expressly au-
thorizes the council to determine the kind of material to
be used.  Also, *Coggeshall v. City,* 78 Iowa, 235; *Grand
Rapids v. Braudy,* 105 Mich. 670 (64 N. W. 29, 32
L. R. A. 116, 55 Am. St. Rep. 472); *Skaggs v. Martins-
ville,* 140 Ind. 476 (39 N. E. 241, 33 L. R. A. 781,
49 Am. St. Rep. 210); *Walker v. Jameson,* 140 Ind.
591 (37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679,
683, 49 Am. St. Rep. 222); *Lindsey v. Mayor,* 104 Ala.
257 (16 South. 545, 27 L. R. A. 436, 53 Am. St. Rep.
44); *Munson v. Colorado Springs,* 35 Colo. 506 (84 Pac.
683, 6 L. R. A. (N. S.) 432); *Cape May v. Cape May,*
35 N. J. Eq. 419.  There is no proof that the price agreed
to be paid for the pavement was exorbitant or unreason-
able, but it is argued that such a pavement is more ex-
pensive than is desirable for small cities, and that brick,
or some other cheaper material, should have been used.

8. SAME:
injunction.

This was a matter purely within the discretion of the council under an express grant of legislative power.

Again, it is argued that there was no competitive bidding and the quarries company had a monopoly on this kind of pavement. There is no testimony to support these claims. Indeed, the contrary is shown.

Whether or not the city should have improved its water plant or put in a system of sewerage before paving its streets was very clearly a matter of discretion over which the courts have no control, unless they undertake by usurpation of power the management of all municipal corporations. *Brewster v. Davenport*, 51 Iowa, 427. To do this would destroy the principle of home rule which is one of the fundamental guaranties under our form of government. Surely it is not for a court to weigh the needs of a city and to say that one improvement should be adopted before undertaking another.

9. MUNICIPAL AUTHORITY: public improvement: discretion: judicial interference.

IV. The only real or debatable question in the case is this: Was the council guilty of such fraud in outlining its plans and specifications and in accepting the bids and letting the contract as that an injunction should issue stopping all further proceedings until final hearing of the case? We shall assume that, if the council was guilty of fraud in any of these respects, an injunction should issue; but this fraud, to justify the issuance of a writ, must be something more than epithetic. The fraud charged consists of the acts of the council in taking the junket upon the invitation of the agent of this quarries company and at its expense. It is difficult to see under the facts of this case how this constituted a fraud. The quarries company had no monopoly on any of the materials or supplies. On the contrary, five bids were received, and that of the quarries company was the lowest. Moreover, it appears that the council was publicly invited to make the trip to investi-

10. MUNICIPAL CONTRACTS: paving: fraud: evidence.

gate pavements which were already down and also the material made by the quarries company. There was nothing wrong in the taking of such a trip. Indeed, it would seem to be the exercise of good judgment and business discretion. The only thing which could be made the subject of objection is the fact that the expenses were born by the quarries company. They had no monopoly, however, on the material, and the specifications did not call for the use of their material. They called for creosoted blocks of a given size, with certain concrete foundation. Other concerns were making creosoted blocks, and they were given equal opportunity to bid. The statute requires the letting of the contract to the lowest bidder, and in accordance therewith the contract was let to the quarries company. No favoritism was shown, and there was no opportunity therefor. Fraud does not consist in mere intention. In order for a court to take notice thereof, something must be done or proposed which will result in harm to some one. If no such harm can result or is possible under the circumstances of the case, then, no matter what the intent, there is no actionable fraud. Moreover, fraud will not be presumed. Indeed, the contrary is assumed. When the council returned, it made a public report, and every one knew that the trip was to be at the expense of the quarries company. This seems to be a common method for securing trade. The country buyer is by various inducements led to the seller in order to get his trade. This is often done by return of railway fares, payment of hotel bills, and in various and other ways which have generally been regarded as legitimate. As the contract was let to the lowest bidder, there was no chance for any favoritism to be shown, nor was there any, as appears in this case. The facts are not in dispute, and the inferences are not doubtful. The question then is one of law, and in our opinion there was no such showing as would justify the

issuance of a temporary writ.    See Spelling on Injunctions (2d Ed.) par. 687.

Moreover, even if there was fraud in accepting the bids and the letting of the contract, plaintiffs have ample protection at law.    They could on that ground defeat the assessments and would not be held for the value of the improvement.    No recovery could be had on a *quantum meruit,* and they could defeat the levy of any tax for paying the contract price.    That an injunction should not issue under such circumstances, see *Field v. Village,* 181 Ill. 186 (54 N. E. 931).    The *Wingert* case, *supra,* most relied upon by appellee, is not in point for the reason that the defendant in that case was asking a disposition of the matter upon affidavits attached to a motion to dissolve. Here the testimony was heard on the motion to dissolve, and we think such a showing was made as called for a dissolution of the restraining order and denial of the temporary injunction.

11. SAME: rights of property owners: adequate legal remedy: injunction.

The orders will therefore be reversed, and the cause remanded, with directions to the trial court to dissolve the temporary writ of injunction.—*Reversed* and *remanded.*