## QUAKER OIL & GAS CO. v. JANE OIL & GAS CO.

No. 8235—Opinion Filed April 17, 1917.

(164 Pac. 671.)

(Syllabus by the Court.)

1. **Corporations—President—Authority.**

The president of a corporation has no inherent authority, by virtue of his office, to contract for the corporation; his power in that respect being no greater than that of any other director.

2. **Specific Performance—Contract of Sale—Injunction.**

Two corporations, designated as the Quaker Company and the Jane Company, entered into a written contract whereby the latter was given an option to purchase certain storage oil belonging to the former, at such time as the Quaker Company desired to sell

the same, and at such price as should be fixed by it. Thereafter, and while said contract was in force, the president of the Quaker Company attempted to sell said oil to the Carter Company. The latter sale contract, the board of directors of the Quaker Company promptly repudiated. Thereafter suit was brought by the Jane Company against the Quaker Company to compel specific performance of the contract for the delivery of the oil named in the contract between said companies, at the price fixed in the unauthorized contract made by the president of the Quaker Company to the Carter Company; the Jane Company basing its right of action upon the sale to the Carter Company, which was subsequently repudiated by the board of directors of the Quaker Company. Held, that the judgment of the court granting a temporary injunction restraining the Quaker Company from disposing of its oil, under the circumstances disclosed by the record, constituted reversible error.

3. **Corporations—Act of President—Validity and Effect.**

Where it appears that the action of the president of a corporation in making a contract for the sale of its properties approximating in value $3,000,000 was promptly repudiated by the board of directors of such corporation, the unauthorized act of the president is not binding upon the corporation in favor of a third person, not a party thereto.

4. **Appeal and Error—Reversal—Grounds—Statute.**

By statute (section 5236, Rev. Laws 1910) this court may reverse, vacate, or modify a judgment of the district court that grants, refuses, vacates, or modifies an injunction. Where, on review of such order or judgment, it appears from the nature of the case and from all the facts properly before the court that the plaintiff was not entitled to an injunction, and that the same should not have been granted, the action of the trial court will be reversed because of the error committed.

Error from District Court, Tulsa County; Conn Linn, Judge.

Suit for specific performance and for a temporary injunction by the Jane Oil & Gas Company against the Quaker Oil & Gas Company. From an order enjoining the defendant, it brings error. Reversed and remanded.

In a suit to compel specific performance of a contract for the delivery of two tanks of crude oil at the price of 80 cents per barrel, and for a temporary injunction enjoining the defendant company from selling or disposing of the oil in controversy, the court after a hearing had issued a temporary order enjoining the defendant from disposing of the oil stored in tanks numbered 198 and 199, situated on the tank farm of the plain-

tiff company, and from in any wise interfering with the oil contained in said tanks until the further order of the court. From the order the defendant, Quaker Oil & Gas Company, brings error. Reversed and remanded.

Carroll & Mason, Samuel W. Hayes, and J. P. O'Meara, for plaintiff in error.

Poe, Hindman & Lundy, for defendant in error.

SHARP, C. J. Both plaintiff in error and defendant in error are domestic corporations, and will be hereinafter referred to as the Quaker Company and the Jane Company. On June 15, 1915, said companies entered into written articles of agreement, the pertinent provisions of which are that the Jane Company agreed to make pipe line connections with the wooden tanks of the Quaker Company on certain lands in section 5, township 18 north, range 7 east, in Creek county, and to run the oil free of charge from said wooden tanks, as the same was produced, into four certain 55,000-barrel steel tanks. numbered 157, 186, 198, and 199 respectively, owned by the Jane Company on its tank farm near Cushing, in Payne county. The Jane Company agreed to fill said four tanks and to purchase from the Quaker Company, at the posted market price at the time said oil was run, all the oil run into tanks numbered 157 and 186. The third and fifth paragraphs of the agreement, respecting the oil to be run into tanks 198 and 199, are as follows:

"Third. The first party also agrees to store the oil so as to be run as aforesaid into tanks numbered 198 and 199, for a period of one year from date it is so run, without any charges for such storage."

"Fifth. The second party also agrees to grant to said first party the option to purchase the oil to be stored in said two tanks mentioned in third paragraph hereof, at any time said second party may desire to sell the same, and at such price as shall be fixed by said second party."

The oil in tanks 157 and 186 was delivered into the possession of the Jane Company on or prior to July 30, 1915, and is not directly involved in this suit, though it appears that at the time of the hearing there was a balance of about $12,000 due on account of the sale of said two tanks of oil.

On the part of the Jane Company, it is insisted that the Quaker Company, on October 1, 1915, desired to sell the oil stored in tanks 198 and 199, and fixed the price thereof at 80 cents per barrel; that thereupon on, to wit, October 8th, it exercised its option to purchase the same and gave notice of that fact by letter to the Quaker Company. The only evidence offered at the hearing, of a "desire to sell" or sale, was a written agreement purporting to have been made and entered into between the Quaker Oil & Gas Company and the Carter Oil Company. This agreement included the crude oil stored in tanks 198 and 199 of the Jane Company, located near Cushing, but did not include the tanks or tank sites. The contract was signed: "Quaker Oil & Gas Company, by E. H. Jennings, Pres." No evidence was introduced or offered to show the authority of Mr. Jennings to make the contract with the Carter Company. The answer of the Quaker Company, while containing certain admissions in respect to the oil delivered in tanks 157 and 186, and that tanks 198 and 199 were filled with oil from its wooden tanks, and which was at the time contained in said tanks, specifically denied under oath each and every allegation of the petition not expressly and explicitly admitted. The effect of the verified answer of the defendant was to place upon the Jane Company the burden of proving a desire or offer to sell, and the fixing of a price for the oil by the Quaker Company, prior to the exercise of its option to purchase on October 8th.

It is not contended that the Quaker Company offered the oil in tanks 198 and 199 to the Jane Company, or that it fixed a price thereon to said company. On the other hand, it is claimed that as the president of the Quaker Company undertook to sell to the Carter Company 62 tanks of oil, including tanks 198 and 199, that said agreement is sufficient to enable the Jane Company, under its option, to exercise the right to purchase at the price made the Carter Company. Assuming that if a sale was in fact made to the Carter Company, it would be sufficient to entitle the Jane Company to exercise its option to purchase the two tanks of oil, we must look to see what there is in the record to establish such a sale. The only evidence of the sale was the contract made by the president. Quite naturally the question then turns upon the authority of the president to make the contract, for if he was without authority, and the corporation for which he undertook to act promptly repudiated his attempt to sell, then it cannot be said that his action was binding upon the Quaker Company, or that the Jane Company could acquire any rights thereby. The only evidence of Jennings' authority is that of Theodore O. Lillystrand. who testified that he was a director of the Quaker Company, and that on or about the 20th day of October, 1915. the board of directors of the Quaker Oil & Gas Company repudiated the contract signed

by its president with the Carter Company, and denied Mr. Jennings' authority to make it. The purported sale of October 1, 1915, covered 62 tanks of 55,000 barrels each, or a total of 3,410,000 barrels, and included 60 55,000-barrel steel tanks, at the price of 80 cents per barrel, and the sites on which the tanks were located. On January 28, 1916, the Jane Company again notified the Quaker Company of its election to exercise its option to purchase the two tanks of oil at the price named in the contract to the Carter Company, to which the Quaker Company on the following day replied that the oil had never been sold, but that if the Jane Company chose to exercise its option, it could have the oil at $1.80 per barrel for all merchantable oil in the two tanks. This offer the Jane Company refused to accept, but instead, on the 4th day of February following, instituted the present suit to compel the delivery of the oil at 80 cents per barrel, or the price fixed by the contract of October 1, 1915, with the Carter Company.

As the case is before us upon an appeal from the order granting a temporary injunction, and as it is yet to be heard upon its merits, it will be unnecessary to determine all of the numerous important questions ably argued in the briefs of counsel. On the record before us the judgment of the lower court must be reversed, upon the ground that it affirmatively appears that Mr. Jennings was unauthorized to make the contract with the Carter Company; and, having been promptly repudiated by the board of directors of the Quaker Company, and there being no other evidence of a desire to sell or sale by the Quaker Company, said contract furnishes no ground for compelling the latter company to sell to the Jane Company the two tanks of oil for 80 cents per barrel. Section 1252, Rev. Laws 1910, provides that the corporate powers, business, and property of all corporations formed under chapter 15, on the subject of Corporations, must be exercised, conducted, and controlled by a board of not less than 3, nor more than 11, directors, to be elected from among the holders of stock. Section 1253 provides for the election by the board of directors of a president, secretary, and treasurer, and that such officers shall perform the duties enjoined on them by law and the by-laws of the corporation. Section 1246 requires that every corporation shall within one month after filing its articles of incorporation adopt a code of by-laws for its government, not inconsistent with the laws of the United States or of the state. Generally speaking, the president of a corporation has no power to buy, sell, or contract for a corporation, nor to control its property, funds, or management. Of course the board of directors may expressly authorize the president to contract; or his authority to contract may arise from his having assumed and exercised that power in the past; or the corporation may ratify his contract, or accept the benefits of it and thereby be bound. But the general rule is that the president cannot act or contract for the corporation any more than any other one director.

There is no evidence as to the authority of Jennings as president of the Quaker Company to act for it in a transaction involving approximately $3,000,000. Neither the articles of incorporation of the company, its by-laws, nor any resolution conferring authority upon the president is contained in the record. The president of a company may not, by virtue of the power inherent in his office, dispose of the personal or other property of the corporation for any purpose, at his pleasure, without especial authority from the board of directors. While it may not be uncommon for the board of directors of a corporation to clothe the president with extensive authority over the management of its affairs, either by by-law or special resolution of the board, yet, in the absence of some such affirmative act, the president has no implied authority on account of his position to act as the agent of the corporation, but like other agents must derive his power from the board of directors or from the corporation. There is no evidence of any custom or usage on the part of the Quaker Company recognizing the right of its president by virtue of his office, to act for and to bind the company, nor any holding out of the president to the public as having any such extended authority. As stated in 7 R. C. L., sec 436:

"While the extent of the inherent authority of the president is not clearly defined, it seems to be quite limited; he has no general inherent authority to act as an agent in making contracts, but like other agents, he must derive his authority from the board of directors or from the corporation."

Speaking of the power of the president of a corporation, in Cook on Corporations, sec. 716, it is said:

"The president of a corporation has no power to buy, sell, or contract for the corporation, nor to control its property, funds, or management. But that the board of directors may expressly authorize the president to contract; or his authority to contract may arise from his having assumed and exercised that power in the past; or the corporation may ratify his contract or accept the benefits of it and thereby be bound. But the general rule is that the president cannot

act or contract for the corporation any more than any other one director."

Among the authorities supporting the rule announced in the foregoing text are Groeltz v. Armstrong R. E. Co., 115 Iowa, 602, 89 N. W. 21; Wait v. Nashua Armory Ass'n, 66 N. H. 581, 23 Atl. 77, 14 L. R. A. 356. 49 Am. St. Rep. 630; Lyndon Mill Co. v. Lyndon Lit. & Bib. Ins. et al., 63 Vt. 581, 22 Atl. 575, 25 Am. St. Rep. 783; Walworth County Bank v. Farmers' L. & T. Co., 14 Wis. 351; St. Clair v. Rutledge, 115 Wis. 583, 92 N. W. 234, 95 Am. St. Rep. 964.

The defendant in error contends that the court below committed no error in granting the temporary injunction, because, it says, this court has on numerous occasions held that the granting or refusing to grant a temporary injunction, involving as it does a matter of discretion, the Supreme Court will not review such order except in case of palpable abuse of such discretion, or a clear showing of error on the part of the trial court. We have frequently held that the granting of a temporary injunction in a proper case rests largely in the discretion of the trial court. But by "discretion" in such cases is meant a sound judicial discretion. The right of a trial court to grant a temporary injunction in any and all kinds of cases, with or without a reasonable showing, cannot be defended upon the ground that as the court exercised the right to grant the order, its judgment is not subject to review. By statute (section 5236, Rev. Laws 1910), the Supreme Court may reverse, vacate, or modify a judgment of the district court that grants, refuses, vacates, or modifies an injunction. Therefore, when it appears from the record that the court should not have granted a temporary injunction, the granting thereof is error, because unauthorized. In the case at hand, as the record is barren of any evidence that the Quaker Company desired to sell the two tanks of oil, and that it fixed a price on the same, as provided for in the articles of agreement, the court should not have granted the temporary injunction. Until there was evidence of these facts, the Jane Company was not entitled to exercise the option claimed for it on account of said contract. In other words, no cause of action had accrued to it, within the terms of the contract, fairly construed. Hence, if at the time it had no cause of action, it was entitled to no relief, injunctive or otherwise.

The discretion of the trial court, involved in its power to act, was but a legal discretion; a discretion to be exercised in discerning the course prescribed by law, according to principles ascertained by adjudged cases. Vickers v. Phillip Carey Co., 49 Okla. 231,

151 Pac. 1023, L. R. A. 1916C, 1155. In hearing and passing upon applications for injunctions, as in other cases, courts are the mere instruments of the law, and can will nothing. Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law. If then, the law does not authorize the granting of an injunction, yet, notwithstanding the order is granted, the will of the judge or of the court being contrary to law, it will be set aside and the order reversed. Osborne v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204, 234. In Perry Public Library Ass'n v. Lobsitz, 35 Okla. 576, 130 Pac. 919, 45 L. R. A. (N. S.) 368, the appeal was prosecuted from an order of the trial court refusing a temporary injunction. It was urged that the granting or refusal of a temporary injunction was a matter resting largely within the discretion of the trial court or judge, and therefore should not be reversed on appeal. Answering the contention, we said:

"This contention correctly states the rule in this jurisdiction. Reaves v. Oliver, 3 Okla. 63, 41 Pac. 353. But when it appears by the petition that plaintiffs are entitled to the relief demanded and such relief or any part thereof consists in restraining the commission or continuance of some act, the commission or omission of which will produce injury to the plaintiffs, a temporary injunction may be granted to restrain such act; and where only questions of law are presented by the bill upon its face, or by the evidence, errors of the court or judge relative thereto are an abuse of discretion which the appellate courts will review and correct."

While in a certain sense the granting of an interlocutory injunction rests in the discretion of the trial court or judge, yet the discretion may not be exercised arbitrarily or capriciously, but according to law and well-established and familiar rules of practice. If improperly exercised in any case, either in granting or refusing it, the error is one to be corrected on appeal. If upon the entire record nothing but questions of law are involved, and it appears that the injunction was improvidently issued, it is the duty of this court to promptly reverse the order or judgment. As said in High on Injunctions (4th Ed.) sec. 1496:

"But the rule that the granting or denying of a preliminary injunction involves such an exercise of judgment upon the part of the chancellor, as will not be disturbed upon appeal, does not apply to cases involving questions of law arising upon the face of the bill. And where it appears from the nature of the case and from all the facts that plaintiff is not entitled to an injunction, it is an abuse of discretion to issue the writ, and the

action of the court in so doing will be reversed on appeal."

The rule is a very general one, and the authorities supporting it are numerous. Among them are Campbell et al. v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567; Penrhyn Slate Co. v. Granville Elec. & L. Co., 181 N. Y. 80, 73 N. E. 566, 2 Ann. Cas. 782; Godwin, Adm'x, v. Phifer, 51 Fla. 441, 41 South. 597; Thompsonville Scale Mfg. Co. v. Osgood. 26 Conn. 16; Chestatee Pyrites, Co. v. Cavenders Creek Gold Min. Co., 118 Ga. 255, 45 S. E. 267; Eau Claire Dells Imp. Co. v. City of Eau Claire, 134 Wis. 548, 115 N. W. 155, 159; Swan v. City of Indianola, 142 Iowa, 731, 121 N. W. 547; Louisville, etc., Co. v. Western Union Telegraph Co., 207 Fed. 1, 124 C. C. A. 573.

As the court must upon final hearing decide not only upon the validity of the contract, and its proper interpretation, and the defenses thereto urged by the Quaker Company, as well as the right of the plaintiff company to the form of relief invoked, and because of the fact that the case is before us upon an appeal from an interlocutory order, we refrain from any expression that may affect the ultimate rights of the parties, other than those already considered and decided.

For the reasons stated, the judgment of the trial court granting a temporary injunction is reversed, and the cause remanded, without prejudice to the rights of the parties to proceed to a final hearing.

HARDY, TURNER, THACKER, and KANE, JJ., concur.