# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS THE DISTRICT COURTS, AND THE COMMERCE COURT

---

### LOUISVILLE & N. R. CO. v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Sixth Circuit. July 22, 1913.)

No. 2,456.

**1. APPEAL AND ERROR (§ 954*)—REVIEW—ORDER GRANTING PRELIMINARY INJUNCTION.**

As a general rule, an appellate court will not reverse an order granting or refusing a preliminary injunction, unless it appears that in making the order the legal discretion vested in the court was improperly exercised; but it will reverse an order granting an injunction where there appears any insuperable objection in point of jurisdiction or merits to the maintenance of the suit, and may in such case dismiss the bill, since there can be no room for the exercise of discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3818–3821; Dec. Dig. § 954.*]

**2. INJUNCTION (§ 38*)—TEMPORARY INJUNCTION—GROUNDS—PREVENTING INTERFERENCE WITH TELEGRAPH LINES.**

A telegraph company is a public service corporation, and where such a company has been operating its lines, forming an extensive system, over the right of way of a railroad company under a contract which has expired by limitation, a court of equity has power in a proper case, in the public interest, to enjoin the railroad company from interfering with such operation pending proceedings instituted by the telegraph company under state statutes to condemn right of way for its lines over the property of the railroad company.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 86–90; Dec. Dig. § 38.*]

**3. COURTS (§ 266*)—JURISDICTION—TERRITORIAL LIMITATION—NATURE OF SUIT.**

Complainant, a telegraph company, for years operated lines over the right of way of defendant's railroad, extending through Kentucky and other states as a part of its general system covering the entire country, under a contract with defendant. The term expired, and, the parties having failed to agree on a renewal of the contract, complainant served notice of its termination. Complainant having instituted proceedings, under the laws of the several states through which the road passed, to condemn right of way for its lines over the right of way of defendant therein, defendant forbade complainant to use the poles and wires on the railroad property after a date fixed, announcing its intention to appropriate them

---

itself if they were not removed. *Held*, that a federal court in Kentucky, in which state defendant was incorporated, had jurisdiction to enjoin it from interfering with the operation of complainant's lines, not only in that state, but in the others, pending the determination of said several proceedings; the suit not being of a local character, but one affecting complainant's entire system, and also rights of the public, and defendant being personally before the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806–808; Dec. Dig. § 266.*]

4. JURY (§ 19*) — CONDEMNATION PROCEEDINGS BY TELEGRAPH COMPANY — VALIDITY OF STATUTE.

Ky. St. § 4679a, authorizing telegraph companies, domestic or foreign, to condemn right of way for their lines along and upon the right of way of any railroad, and prescribing the procedure therefor, is not in violation of the state Constitution, in that it provides for a jury of 12 in the county court to fix the compensation to be paid, whereas section 248 of the Constitution provides that "in civil and misdemeanor · cases in courts inferior to the circuit courts a jury shall consist of six persons," since the condemnation proceeding is a special proceeding, and not necessarily to be classed with ordinary civil cases, and since an appeal is given from the county court to the circuit court.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 104–133; Dec. Dig. § 19.*]

5. COMMERCE (§ 8*)—TELEGRAPH COMPANIES—VALIDITY OF STATE STATUTES— EMINENT DOMAIN.

A state statute, granting the right of eminent domain to telegraph companies with respect to railroad rights of way, is not inconsistent with any legislation of Congress, nor invalid as an attempted regulation of interstate commerce as applied to interstate lines of railroad.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. § 8.*]

6. EMINENT DOMAIN (§ 10*)—FOREIGN CORPORATIONS—CHARTER POWERS—CONSTRUCTION OF STATUTE.

The Western Union Telegraph Company is incorporated under the telegraph statute of New York of 1848, which by amendment in 1862 authorized any company organized thereunder to build or acquire lines additional to those described in its certificate of organization, either within or without the state, but required it in such case to file with the Secretary of State within one year thereafter a certificate describing such lines. *Held*, that such requirement was a condition subsequent, and did not prevent the company from acquiring new lines in other states, or from condemning right of way therefor, if authorized by the laws of such states; that its failure to file the required certificate within the time fixed did not affect its right to continue to maintain and operate such lines in the absence of any action by the state of New York, which alone could enforce the requirement and could waive it.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35–48; Dec. Dig. § 10.*]

7. INJUNCTION (§ 153*)—PRELIMINARY INJUNCTION—CONDITIONS ON GRANTING.

Where complainant had been operating its telegraph lines over the right of way of defendant railroad company for 25 years under a contract which did not provide for the payment of rental, but for the rendition of mutual services between the parties, an injunction granted after the termination of the contract, restraining defendant from interfering with the operation of complainant's lines pending suits by complainant to condemn right of way for the same, and which required "both parties to maintain the present status," was not subject to objection as being im-

provident or inequitable because it did not require complainant to pay a money rental.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 338, 339; Dec. Dig. § 153.*]

8. INJUNCTION (§ 157*)—PRELIMINARY INJUNCTION—SCOPE.

Complainant, a New York corporation, obtained a temporary injunction from a federal court in Kentucky restraining defendant railroad company from interfering with the operation of complainant's telegraph lines, which constituted a unitary system over its right of way in that and other states pending proceedings in such several states to condemn right of way therefor. *Held*, that the order was not reversible as an abuse of discretion because in two of such states, states where foreign telegraph companies could not exercise the right of eminent domain, local companies were organized which took over complainant's lines in such states and instituted the condemnation proceedings; the right of such companies to maintain the same being a matter for determination by the local courts in the proceedings themselves.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 340, 342; Dec. Dig. § 157.*]

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company.. From an order granting a temporary injunction defendant appeals.    Affirmed.

For opinion below, see 201 Fed. 946.

This is an appeal under section 129 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1134 [U. S. Comp. St. Supp. 1911, p. 194]) from an order refusing to dissolve an injunction. The facts requiring present statement are these:

On June 18, 1884, the parties to this suit, whom we shall call respectively the railroad company and the telegraph company, entered into contract whereby the telegraph company was given, during the term of the contract, the exclusive right of way for the construction and use of commercial telegraph lines along the railway lines then or thereafter owned, leased, controlled, or operated by the railroad company. The latter was given a considerable amount of free telegraph service, and detailed provision was made for certain interchanges of services and facilities of the two companies in connection with the operation of the railroad and telegraph business, respectively. The contract was to continue in force until July 1, 1909, and thereafter until the expiration of one year after the giving of written notice by either of the parties of its election to terminate the contract. For about two years following July, 1909, negotiations were had between the two companies respecting their future relations. The railroad company being unwilling to make any material modification of the existing contract, the telegraph company gave written notice of the termination of the same at the expiration of one year from the delivery of the notice, which has been treated as August 17, 1911. Thereafter the telegraph company made a proposition, looking to its acquirement of a permanent right of way, at a rental much smaller than the railway company regards as at all adequate, and on December 21, 1911, instituted proceedings in the county court of Jefferson county, Ky., to expropriate the right to maintain its poles, wires, and other apparatus upon the right of way of the railroad company within the state of Kentucky. The railroad company opposed the condemnation proceeding, and denied the constitutionality of the statute under which it was taken. The county court held the statute constitutional, whereupon the railroad company instituted suit in the circuit court for Jefferson county, to prohibit the county court from trying the condemnation proceeding. The telegraph company thereupon dismissed its proceeding in the county court, and brought its condemnation suit in the court below on

July 9, 1912. On August 5th following, the railroad company gave written notice to the telegraph company, requiring the latter to commence, immediately after August 17, 1912 (being the date of the termination of the contract, under the telegraph company's notice), to remove from the railroad right of way and premises all the poles, wires, batteries, instruments, appliances, and other fixtures comprising the telegraph line, and to complete such removal previous to December 1, 1912. The telegraph company was further notified that in default of its compliance with such requirement of removal previous to the prescribed date, the railroad company would take possession of, appropriate, and use, after that date, all the telegraph company's poles, cross-arms, wires, batteries, instruments, appliances, and other fixtures remaining at that time on the railroad company's right of way or premises, in all the states affected by the contract, and would hold or otherwise dispose of the same as its own property, and refuse to longer permit the telegraph company to use the same for any purpose.

The railroad company further gave notice that it would be compelled to make use of the telegraph company's poles and wires for telegraph business in conducting the railroad's business until after the removal of the telegraph company's lines, because of the inability of the railroad company meanwhile to erect its own telegraph or telephone lines. Meanwhile, the telegraph company had instituted condemnation proceedings in the states of Tennessee, Alabama, Georgia, Mississippi, Louisiana, and Florida, for similar condemnation of the rights of way along the railroad company's lines in those states; and the Western Union Telegraph Company of Illinois and the Western Union Telegraph Company of Indiana had instituted proceedings for similar condemnation of rights of way in Illinois and Indiana, respectively, which proceedings were to inure to the benefit of the telegraph company. On October 14, 1912, which was a little over two months after the giving by the railroad company of the notice to remove last referred to, the telegraph company filed its bill in this cause. Injunction was asked for the purpose of giving opportunity of testing complainant's legal rights of condemnation. A temporary injunction was granted, and after the filing of answer, a motion to dissolve the injunction was made, from whose denial this appeal is taken.

Helm Bruce and H. L. Stone, both of Louisville, Ky., for appellant.

Richards & Harris and Humphrey, Middleton & Humphrey, all of Louisville, Ky. (Rush Taggart and George H. Pearsons, both of New York City, of counsel), for appellee.

Before WARRINGTON, KNAPPEN and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] The general rule by which this court should be governed in reviewing orders relating to injunction, temporary or interlocutory, is that the order will not be disturbed unless it appears that the court below has exercised its discretion upon a wholly wrong comprehension of the facts or law of the case; or, otherwise stated, that the legal discretion vested in the court to grant or withhold the order was improperly exercised. Interurban Ry. & T. Co. v. Westinghouse Elec. & Mfg. Co., 186 Fed. 166, 170, 108 C. C. A. 298, and cases there cited; City of Shelbyville v. Glover, 184 Fed. 234, 238, 106 C. C. A. 376, and cases cited. If, however, there appears any insuperable objection in point of jurisdiction or merits to the maintenance of the suit, the court should at least reverse the order for injunction (Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 72 Fed. 545, 550, 19 C. C. A. 25; Mayor, etc., of Knoxville v. Africa, 77 Fed. 501, 505, 23 C. C. A. 252; City

of Shelbyville v. Glover, supra, at page 238), and may properly dismiss the bill of complaint (Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 495, 20 Sup. Ct. 708, 44 L. Ed. 856; Harriman v. Northern Securities Co., 197 U. S. 244, 286, 25 Sup. Ct. 493, 49 L. Ed. 739; U. S. Fidelity Co. v. Bray, 225 U. S. 205, 214, 32 Sup. Ct. 620, 56 L. Ed. 1055; City & County of Denver v. New York Trust Co., 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101, decided by the Supreme Court May 26, 1913). In such case there could be no room for the exercise of discretion in granting or refusing to dissolve the injunction.

[2] By section 3964, Rev. Stat. United States (U. S. Comp. St. 1901, p. 2707), all railroads in operation are made post roads. By the act of July 24, 1866 (14 Stat. 221, c. 230; Rev. Stat. § 5263, and following [U. S. Comp. St. 1901, p. 3579]), telegraph companies are given the right to construct and operate their lines along and over post roads. But it has been held that this latter statute does not confer the power of eminent domain. Western Union Tel. Co. v. Pennsylvania R. R. Co., 195 U. S. 540, 560, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517. The telegraph company is, however, a public service corporation. Its activities are of public, and not merely of private, concern. When the bill in this cause was filed, it was operating, over the railway lines in question, an important part of its telegraph system, which extends over the entire United States, and has important foreign connections. It serves not only private customers, but the state and national governments and their representatives. Any interruption of the service of the telegraph company may well result in an interruption of public service.

When the bill was filed the telegraph company was occupying the railway company's right of way by virtue of a previous contract therefor; and, while its right to so occupy under the contract had ceased, it was prosecuting in various of the states statutory proceedings for the acquirement of interests necessary to the continued occupancy of such rights of way. Courts of equity under these circumstances have the power to enjoin interference by the railroad company with such possession by the telegraph company, at least in the jurisdictions in which such proceedings are pending, for such reasonable time as may be required to prosecute to conclusion the various pending condemnation proceedings, assuming, of course, the existence of a meritorious cause, and further assuming the validity and applicability of state statutes authorizing such condemnation. Winslow v. B. & O. Ry. Co., 188 U. S. 646, 660, 23 Sup. Ct. 443, 47 L. Ed. 635; Owensboro, etc., Ry. Co. v. Harrison, 94 Ky. 410, 22 S. W. 545. Appellant insists, however, that the federal court, sitting in Kentucky, has no jurisdiction over the property involved so far as it lies outside the state of Kentucky, and so has no power to enjoin interference with the telegraph property outside that state; that the Kentucky statute of condemnation invoked by the telegraph company is unconstitutional and void, for various reasons; that appellee has no charter power to condemn the lands in question; that relief is precluded through laches, lack of equity, and estoppel; that the situation with respect to cer-

tain of the pending condemnation proceedings is such as to preclude injunction in aid thereof; and that on the merits appellee is without standing.

[**3**] 1. *Had the District Court, sitting in Kentucky, jurisdiction to enjoin the threatened acts of interference in states other than Kentucky?*

The general rule is well established that where the necessary parties are before a court of equity it is immaterial that the subject-matter of the controversy, whether real or personal property, is beyond the territorial jurisdiction of the court. In such case the power exists to compel the defendant to do all things necessary, which he could do voluntarily, to give full effect to the decree against him. Courts in such cases consider the equities between the parties, and make decrees in personam, according to such equities, enforcing obedience to their decrees by means of process against the person. This principle has been recognized in numerous cases, among the more prominent of which are: Massie v. Watts, 6 Cranch, 149, 3 L. Ed. 181; Muller v. Dows, 94 U. S. 444, 449, 24 L. Ed. 207; Phelps v. McDonald, 99 U. S. 298, 308, 25 L. Ed. 473; Philadelphia Co. v. Stimson, 223 U. S. 605, 622, 32 Sup. Ct. 340, 56 L. Ed. 570. See, also, Robertson v. Howard, 229 U. S. 254, 33 Sup. Ct. 854, 57 L. Ed. 1174, decided by the Supreme Court June 10, 1913. In such cases the decree, of course, does not operate upon the res, but only upon the person of the defendant. Fall v. Easton, 215 U. S. 1, 8, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853, and following, and cases there cited.

Appellant contends that this principle applies only to cases of fraud, trust, and contract, and so is without application here. It is true that Massie v. Watts and Phelps v. McDonald involved charges of fraud, and that Muller v. Dows was an action for the foreclosure of a mortgage upon land in more than one state, and so was based upon contract. It is also true that in Massie v. Watts the principle was stated as applying to cases of "fraud, of trust, or of contract." But we have found nothing in any of the cases to which our attention has been called limiting the jurisdiction to such cases. On the other hand, there is no apparent reason for such limitation. Indeed, in Philadelphia Co. v. Stimson, 223 U. S., at page 623, 32 Sup. Ct. 345, 56 L. Ed. 570, which was not a case of fraud, contract, or trust, the Supreme Court of the District of Columbia was expressly held, upon a bill filed to set aside certain harbor lines in the harbor of Pittsburgh, Pa., to have jurisdiction to restrain the Secretary of War from causing a criminal proceeding to be instituted against complainant because of the reclamation and occupation of its land outside the prescribed limits. It was there said:

"The defendant is within the district, amenable to the process of the court. There is no ground upon which it may be denied jurisdiction to decide whether he should be restrained from continuing his opposition to the complainant's plan of improvement. Rather should it be said that the case falls within the general rule sustaining the jurisdiction of a court of equity which has control of the person of the defendant and may compel obedience to its decree. Phelps v. McDonald, 99 U. S. 298, 308 [25 L. Ed. 473]."

But appellant contends that an action for the threatened interference with appellee's poles, wires, and equipment is merely local, and so could be brought only in a court having jurisdiction over the territory in which the injury is committed. But is the threatened interference merely local? Assuming for the moment that such interference with the poles, wires, and equipment would affect only the physical structures involved, even then, except so far as the properties threatened were real in nature, the action would seem to be transitory. An interference by appellant with the poles would not have been a trespass upon real property, both because appellant was in possession of the right of way, and, even more so, because, the contract having expired, together with the easement of support for the poles, the latter had no real estate character. The case before us is not a proceeding in rem. Its purpose was to preserve the status quo until appellee's rights of expropriation can be determined by the state courts. The cases principally relied upon by appellant in support of its contention are not controlling. For example: In Northern Indiana R. R. Co. v. Mich. Central R. R. Co., 15 How. 233, 14 L. Ed. 674, it was held that the United States Circuit Court for the District of Michigan had no jurisdiction to restrain the building of a railroad in Indiana in alleged violation of complainant's exclusive right to build and maintain a railroad along the route in question. The suit was founded upon the alleged exclusive nature of complainant's charter, which allowed it to oust the defendant company from its right of way. In denying the jurisdiction of the Michigan court the Supreme Court laid stress upon the proposition that ejectment could not have been maintained in the state of Michigan, and seemingly by analogy applied the same rule to the suit in question. In Mississippi, etc., R. R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311, it was held that the United States Court for the District of Iowa had no jurisdiction with respect to the removal, as an obstruction to navigation, of so much of a bridge across the Mississippi river as was beyond the Iowa state line. But that was a suit to abate a nuisance, and was properly characterized in the opinion as a proceeding in rem.

The distinction between local and transitory actions is well illustrated in Ellenwood v. Marietta Chair Co., 158 U. S. 105, 15 Sup. Ct. 771, 39 L. Ed. 913, and Stone v. United States, 167 U. S. 178, 17 Sup. Ct. 778, 42 L. Ed. 127. In the former case it was held that a court sitting in Ohio had no jurisdiction of a proceeding in trespass upon lands situated in another state, although conversion of the timber cut was also involved, and for the reason that the principal cause of action was the trespass. In the latter case, however, a court sitting in Washington was held to have jurisdiction of an action for timber cut in Idaho, because the conversion of personal property was the gravamen of the charge, the Chair Company Case being distinguished in the opinion.

But is it true that the injury by the threatened interference with appellee's possession and use of the telegraph poles and wires affects only the physical structures involved? If property rights elsewhere are directly and immediately affected by such interference, it would

seem clear that the right of action for such further interference would be transitory. This general proposition is fairly illustrated by Miller & Lux v. Rickey (C. C.) 127 Fed. 573, affirmed by the Circuit Court of Appeals for the Ninth Circuit, 152 Fed. 11, 81 C. C. A. 207. In a narrow view, an interference with appellee's poles and wires would affect the physical structures so interfered with, and so would be to that extent a local injury. But in its broader aspect the injury affects the entire unitary telegraph system of which the poles and wires in the various states constitute merely parts. The threatened act of interference in each state was but a part of an announced plan of presumably simultaneous interference with the telegraph system on appellant's lines throughout. An interference in one state would destroy the through communication now existing. The injury is thus not alone to the physical structures where locally situated, nor alone to appellee, but extends to and affects directly the interests of the public, not only in each of the states in which the telegraph lines in question are located, but elsewhere and generally. The injunction bill avoided a multiplicity of suits, and the defendant was before the court and subject to its processes and orders. The court did not, in our opinion, lack jurisdiction to enjoin it from interfering by its action with the existing status, pending the determination of appellee's right to acquire a permanent interest in the use of the railroad's right of way, from the mere fact that the physical structures threatened with interference were located in states beyond the territorial jurisdiction of the court. We are unable to see that section 57 of the Judicial Code evidences a congressional intent to forbid the exercise of jurisdiction of the nature we are considering. That section relates to proceedings in rem. The jurisdiction here in question must be sustained, if at all, upon the ground that the court is acting upon the person of the defendant.

[4] 2. *The validity of the Kentucky condemnation statute.*

By section 4679a of the Kentucky statutes, telegraph companies, chartered or incorporated by the laws of Kentucky *or of any other state,* are given the right, upon making just compensation as provided by statute—

"to construct, maintain and operate telegraph lines * * * on, along and upon the right of way and structures of any railroad in this state."

Subsection 3 provides for condemnation proceedings in the county court, and by subsection 4 a jury of 12 is provided for the assessment of damages and compensation. Subsection 7 provides for the entry of judgment upon the verdict of the jury, and by subsection 8 each party is given the right of appeal to the Court of Appeals of the state. Section 242 of the Constitution of Kentucky forbids the General Assembly to deprive any person of an appeal from a preliminary assessment of damages, and provides that upon such appeal "the amount of damages shall, in all cases, be determined by a jury according to the course of the common law." Such jury obviously must be composed of 12 persons. Capital Traction Co. v. Hof, 174 U. S. 1, 13, 19 Sup. Ct. 580, 43 L. Ed. 873; Wendling v. Commonwealth, 143 Ky. 587,

137 S. W. 205. Section 248 of the Constitution of Kentucky provides that:

"In civil and misdemeanor cases, in courts inferior to the Circuit Courts, a jury shall consist of six persons."

It is argued that although the condemnation statute provides for a jury of 12, it is unconstitutional because such jury is provided in a court which can constitutionally, "in civil and misdemeanor cases," have a jury of but six persons.

The rule is too well settled to require reference to authority that a statute may not be declared unconstitutional unless its unconstitutionality is clear. The statute in question was passed 15 years ago. A case involving its machinery has been before the Court of Appeals of the state (Postal Telegraph Cable Co. v. Patton, 153 Ky. 187, 154 S. W. 1073); the question of constitutionality not having been raised, so far as appears from the reported decision. The statute has been held constitutional by the judge of the District Court in this case, as well as by the judge of the county court in the condemnation proceeding involved here, although the point now under consideration is not mentioned in the opinion of the county judge, and the opinion of the district judge is not in the record. We are not impressed that the statute is unconstitutional by reason of the objection we are considering. An assessment preliminary to the jury's award does not seem to be constitutionally necessary; and, if the trial in the county court is a constitutional jury trial, the statute is satisfied. A jury of the constitutional number is there provided. True, a jury of 12 is by the Constitution impliedly forbidden to the county court "in civil and misdemeanor cases." The trial on the question of compensation is a suit, a controversy, a judicial proceeding, within the federal judiciary and removal statutes, and is "subject to the ordinary incidents of a civil suit"; and because of this (there being the requisite diversity of citizenship), this suit was properly brought in the federal court. Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 244, 25 Sup. Ct. 251, 49 L. Ed. 462, and following. At the same time, the proceeding is one of a special nature, not an ordinary "civil" case, as the term is usually employed. The county court is a constitutional court. The Constitution provides (section 141) that its jurisdiction "shall be regulated by general law." It is a court of record. It has judicial powers. Presumably it has the power of superintendence over the trial and the control of verdict incident to a common-law trial by jury, as defined in Capital Traction Co. v. Hof, supra, 174 U. S. at page 13, 19 Sup. Ct. 580, 43 L. Ed. 873. That appellant is given for the protection of its rights a jury of greater dignity than permitted in the ordinary "civil and misdemeanor cases" does not invalidate, unless this proceeding clearly belongs in that category; for the Constitution does not forbid to the county court a constitutional jury in cases other than "civil and misdemeanor cases." The general statute prescribing the jurisdiction of county courts confers jurisdiction over condemnation proceedings only because embraced in the term "such other jurisdiction as may be conferred upon it by law." We are not satisfied that it is the intent of the Constitution to forbid a constitu-

tional jury in a special proceeding of this character. But were the contrary to be assumed, it is clear that if an appeal is provided from a judgment of the county court to the circuit court, with the right of trial by constitutional jury, the objection in question is obviated, the proceeding in the county court being in such case properly regarded as a preliminary assessment.

By section 978 of the Kentucky statutes an appeal to the circuit court is expressly given "from judgments of the county court in proceedings to condemn land for any purpose." In the circuit court a constitutional jury can admittedly be had. The provision cited is broad enough to embrace proceedings under the telegraph condemnation act. It was passed, however, in 1893, five years before the adoption of the act giving telegraph companies the right of eminent domain; and the latter act provides that "all laws in conflict" with it are repealed. It is argued that the general act of 1893 (Laws 1893, c. 221, § 29) is in conflict with the special act of 1898 (Laws 1898, c. 49), because the former provides for appeal to the circuit court, while the latter makes provision only for an appeal to the Court of Appeals, where trial by jury may not be had, and that the former act is thus necessarily repealed. Such result does not necessarily follow. The repealing clause of the later act does not mention the act of 1893. The former is repealed, if at all, only because necessarily in conflict with the latter. Courts will always construe a legislative act so as to give it effect as law if it be practicable to do so (Tabor v. Cook, 15 Mich. 322, 325); and the question of repeal is one of legislative intent. Campau v. Detroit, 14 Mich. 276. We think the act of 1898 and the act of 1893 are reasonably susceptible of such construction as to permit an appeal from the judgment of the county court to the circuit court, with the right of review by the Court of Appeals of the judgment of the latter court. Such a construction was placed by the Supreme Court of Alabama upon a condemnation statute of that state under circumstances not greatly differing from those presented here. Woodward Iron Co. v. Cabaniss, 87 Ala. 328, 6 South. 300; Postal Telegraph Cable Co. v. Alabama Great Southern Ry. Co., 92 Ala. 331, 9 South. 555.

By section 8 of the telegraph condemnation statute an appeal by the railroad company is not allowed to operate as a supersedeas, provided the telegraph company give bond in double the amount of the award payable in case the judgment shall be reversed; while under section 242 of the state Constitution municipal and other corporations generally, as well as individuals, invested with the right of taking private property for public use are required to make compensation before the property is taken, injured, or destroyed. This provision of section 8 is apparently unconstitutional; but, in our opinion, it does not necessarily affect the validity of the remainder of the act. Other objections to the constitutionality of the act are urged. We have considered them all, and content ourselves with saying that, in our judgment, they do not, so far as available to appellant, render the act unconstitutional.

[5] *Is the Kentucky condemnation statute invalid as attempting to regulate interstate commerce?*

By virtue of Act June 15, 1866, c. 124, 14 Stat. 66 (Rev. Stat. § 5258 [U. S. Comp. St. 1901, p. 3565]), and Act June 8, 1872, c. 335, 17 Stat. 308, 309 (Rev. Stat. § 3964 [U. S. Comp. St. 1901, p. 2707]), all railroads are made government post roads. By Act July 24, 1866, c. 230, 14 Stat. 221 (Rev. Stat. §§ 5263–5269 [U. S. Comp. St. 1901, pp. 3579, 3580]), telegraph companies are authorized to construct, maintain, and operate lines of telegraph on the public domain and over and along post roads of the United States, such lines to be so constructed and maintained as not to interfere with the ordinary travel on such roads; provision being made for the transmitting of telegrams both for the public and for the government by railroads having telegraph lines. The transmitting of telegraphic communication is commerce, and telegraph companies doing interstate business are federal instrumentalities of commerce and subject to the jurisdiction of Congress under the commerce clause of the Constitution. Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 8, 24 L. Ed. 708, and following. By the act creating the Commerce Court (Act June 18, 1910, c. 309, 36 Stat. 544 [U. S. Comp. St. Supp. 1911, p. 1288]), the provisions of the commerce act were extended to telegraph companies.

Appellant contends that by the legislation referred to Congress has occupied the field of regulation with respect to both railroad and telegraph companies engaged in interstate commerce, and by the telegraph act of 1866 referred to has deliberately withheld from telegraph companies the right of eminent domain, and evidenced an intention that telegraph companies may construct and operate telegraph lines on railroad rights of way only with the consent of the railroad companies, thus excluding the states from jurisdiction over that subject. If Congress has so occupied the field and evidenced such intention, the claimed result follows. Northern Pacific Ry. Co. v. State of Washington, 222 U. S. 370, 32 Sup. Ct. 160, 56 L. Ed. 237; Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314. But the mere fact that Congress has legislated upon the general subject does not exclude state legislation, unless an intent exclusively to occupy the field is indicated, except where the state legislation conflicts with the federal. See Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, recently decided by the Supreme Court. The case specially relied upon to support the contention that Congress has denied to telegraph companies eminent domain on railroad rights of way is Western Union Telegraph Co. v. Pennsylvania R. R. Co., 195 U. S. 540, 25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517, cited in an earlier part of this opinion. That case, in our opinion, lends no support to this contention. True, it was there held that the act of 1866 did not confer upon telegraph companies the right of eminent domain, or authorize the occupation by telegraph companies of the rights of way of railway companies without the consent of the latter; and, as there was in that

case no state statute which was even claimed to give such right, the effect of such statute, had there been one, was expressly passed by without determination. There is, however, in our judgment, nothing in the opinion cited which even impliedly casts doubt upon the validity of such state legislation. On the contrary, certain decisions of the inferior federal courts sustaining the right of eminent domain under state statutes are there cited without disapproval.[1]

. In the Pennsylvania case Congress was not declared to have occupied the field of regulation in the respect stated, nor to have indicated an intention to exclude the exercise of eminent domain under state legislation. On the contrary, "the fundamental idea and sole purpose" of the act of 1866 was held to be "a prohibition of all state monopolies," citing and relying upon Pensacola Telegraph Co. v. Western Union Telegraph Co., supra. As expressed in Western Union Telegraph Co. v. Richmond, 224 U. S. 160, 169, 32 Sup. Ct. 449, 451 (56 L. Ed. 710):

"It [the act of 1866] made the erection of telegraph lines free to all submitting to its conditions, as against an attempt by a state to exclude them because they were foreign corporations, or because of its wish to erect a monopoly of its own."

Not only do we see nothing in the act of 1866 indicating an intention by Congress to exclude the power of the states to grant telegraph companies the right of eminent domain with respect to railroad rights of way, but we think such statutes directly promote the object of the federal statute as declared in the Pennsylvania and Richmond cases, and that it was the intention of Congress to leave to the states the question of granting or withholding the right of eminent domain.

[6] 3. *Has appellee charter power to condemn the lands in question?*

Appellee was incorporated under the New York telegraph act of 1848 (Laws 1848, c. 265), which provided for such organizations for the purpose of owning, constructing, using and maintaining lines of electric telegraph wholly within or partly beyond the limits of the state. Previous to 1862, according to its articles of incorporation, its line (so far as concerns the lines under consideration here) extended only from Cincinnati, through Covington, Georgetown and Frankfort to Louisville, with a branch to Lexington. In 1862 (Laws 1862, c. 425) the telegraph statute was so amended as to authorize any telegraph company incorporated under it to own, construct, use, and maintain any line or lines of electric telegraph not described in the original certificate of organization, whether wholly within or wholly or partly beyond the limits of the state of New York, upon the terms and conditions and subject to the liabilities prescribed in the original act, so far as applicable. In case of such construction, ownership, use, or maintenance of lines not described in the original certificate of organization, the company was required, within one year after such

---

[1] Postal Tele. Cable Co. of Idaho v. Oregon Short Line R. Co. (C. C.) 104 Fed. 623; s. c. (C. C. A. 9th Cir.) 111 Fed. 842, 49 C. C. A. 663; Postal Tele. Cable Co. of Montana v. Oregon Short Line R. Co. (C. C.) 114 Fed. 787; Postal Tele. Cable Co. v. Southern Ry. Co. (C. C.) 89 Fed. 190.

construction or acquirement of ownership, to file in the office of the Secretary of State of New York a certificate to be executed and acknowledged by at least two-thirds of the directors of the corporation, describing the general route of the line, and designating the extreme points connected thereby. No certificate covering the route in question seems to have been filed, and appellant now insists that appellee is without power to construct and operate the line in question, and so cannot take the benefit of the statutes of Kentucky and the other states involved, which grant the right of eminent domain for purposes of such construction and maintenance, because prohibited by the state of New York from extending its operations beyond the limits stated in its articles of incorporation. It may be conceded that if appellee is prohibited by the laws of New York from owning, constructing, operating, and maintaining the telegraph lines in question, such prohibition would be available as a defense to one whose lands are proposed to be taken away without his consent. Case v. Kelly, 133 U. S. 21, 23, 10 Sup. Ct. 216, 33 L. Ed. 513; United States v. Northern Pacific R. R. Co., 152 U. S. 284, 300, 14 Sup. Ct. 598, 38 L. Ed. 443; Tulare Irrigation District v. Shepard, 185 U. S. 1, 7, 22 Sup. Ct. 531, 46 L. Ed. 773; Atkinson v. Marietta & Cincinnati Ry. Co., 15 Ohio St. 21. But does this prohibition appear? The failure to file the certificate of extended route does not have the effect of destroying the incorporation of the telegraph company. We may therefore lay out of account such decisions as deny the right of eminent domain to a mere de facto corporation. Nor is appellee without specific authority to extend its lines over the route in question. On the contrary, such authority is expressly conferred by the statute of appellee's creation. The only alleged infirmity is that the extended route has not been certified to the New York state authorities, as required by the act. But such certification is not made a condition precedent to the right of extension. To the contrary, permission to so extend previous to any certification thereof, or of intention to do so, is necessarily implied. It follows that if appellee's right to extend its lines over the existing routes is to be tested as of the time of its application to condemn for the purpose, a contravening of the New York statute could not be claimed, for that statute requires no certification until after the construction, etc. If, however, the date of original construction and operation of the lines is to be taken, the question then is, Has the right to continue such ownership and operation been lost; and, if so, how? The statute does not declare that the failure to certify the extended route within the designated period shall ipso facto work forfeiture of the right to continue the ownership and operation of such extended lines. Nowhere in the original act, or in the amendment of 1862, nor in any previous amendment to which our attention has been called, is there any provision whatever by way of penalty for failing to make such certification. In these circumstances, we think the applicable rule is that appellee's failure to make the certificate did not, ipso facto, terminate appellee's rights; that the state of New York alone is concerned with the enforcement of this condition sub-

sequent, and may either enforce it or waive it, as it may deem best. It follows that it does not lie with appellant to set up appellee's default in the respect stated as a defense to the condemnation proceedings. The following authorities are more or less pertinent to the subject: Matter of New York, etc., Bridge Co. v. Smith, 148 N. Y. 540, 546, 42 N. E. 1088; Briggs v. Cape Cod Ship Canal, 137 Mass. 71; Brown v. Wyandotte, etc., Ry. Co., 68 Ark. 134, 139, 56 S. W. 862, and following; Coe v. Gregory, 53 Mich. 19, 18 N. W. 541.

The line of authorities holding that under the National Banking Act the only penalty for violation of certain administrative features of the act is forfeiture of the charter, while not strictly in point, have some bearing upon the general principles involved here.

[7] 4. *Laches, lack of equity and estoppel.*

Appellee is charged, with respect to the institution and conduct of condemnation proceedings, with laches so gross as to preclude equitable relief. But this subject was addressed to the equitable discretion of the District Court. There are pertinent facts and considerations tending to support the discretion which was exercised. Without attempting to discuss the arguments pro and con, it is sufficient that we cannot say that the District Court exceeded the limits of a proper discretion in failing to give to the considerations urged by appellant the weight which it claims for them.

It is further insisted that the granting and the refusal to dissolve the injunction was improvident and inequitable because appellee was not required, as it is contended it should have been, to pay appellant at stated times a current rental for the use of its right of way pending condemnation proceedings. The injunction bond does not secure such rental in case the injunction is ultimately sustained; and it is not clear that it could be taken into account in an award of compensation in the condemnation proceedings. Appellant makes a showing, by affidavit, of large rental value of its right of way. It would be inequitable to deprive appellant of the use of its property pending litigation without suitable compensation therefor. But the contract under which the parties were operating when litigation began did not provide a money rental. The consideration moving to each party was an interchange of service. The injunction expressly requires "both parties to maintain the present status," and we infer from the opinion that the court understood that appellant was actually having the use of appellee's telegraph plant during the pendency of suit, not only poles and wires, but "apparatus and structures"; and appellee's brief asserts that this use includes instruments, batteries, and terminal and city wires. Judge Evans laid stress upon his belief "that the defendant itself will be well-nigh as much benefited by the injunction as will be the complainant," adding: "Indeed, it is difficult to see how either side could get along without it if active and hostile litigation should continue." If this understanding of the facts is correct, we cannot say that the district judge exceeded a proper discretion in failing to require payment of money rental. If, however, appellee has failed, or shall hereafter fail, in readiness and willingness to give appellant such

service, appellant should have the right to dissolution of the injunction, unless upon payment of reasonable compensation pending the same.

[8] 5. *Condemnation proceedings in particular cases.*

It is conceded that foreign telegraph companies have not the right of eminent domain under the laws of Illinois and Indiana. In those states, shortly before the institution of this suit, condemnation proceedings were begun by the Western Union Telegraph Company of Illinois and the Western Union Telegraph Company of Indiana, respectively; those companies being respectively organized under the laws of Illinois and Indiana. The record tends to show, and we assume, that these two corporations are merely subsidiaries of, and owned and controlled by, appellee, and were organized for the purpose of condemning the rights of way over appellant's road in those states, and under an arrangement whereby appellee's poles and wires are to be turned over to the local corporations on their acquiring the rights of way sought to be condemned. The condemnation proceedings are characterized as fraudulent and collusive, and such as should not be countenanced by this court. A similar question was presented to the Court of Appeals for the Ninth Circuit in Oregon Short Line R. R. Co. v. Postal Telegraph Cable Co. of Idaho, 111 Fed. 842, 49 C. C. A. 663, which was a direct review of a condemnation proceeding under the statutes of Idaho, which statutes did not give the right of eminent domain to foreign corporations. It was there held that when the condemnor showed that it was a corporation de facto of the state, the further right to contest its authority to condemn land or prosecute the objects of its organization belongs to the state alone. The same question was presented to the Supreme Court of Utah, likewise on direct review of condemnation proceedings, and the same holding made. Postal Telegraph Cable Co. of Utah v. Oregon Short Line R. R. Co., 23 Utah, 474, 480, 65 Pac. 735, 90 Am. St. Rep. 705, and following. A contrary holding in a case of attempted condemnation by a railroad company was made in Nebraska, whose laws, however, do not allow a foreign railway corporation to either acquire or hold a right of way except on becoming a corporation of that state. Koenig v. C., B. & Q. R. Co., 27 Neb. 699, 703, 43 N. W. 423. Assuming that only a de jure corporation can lawfully exercise the power of eminent domain, we are not prepared to hold that the Western Union Telegraph Companies of Illinois and Indiana are not de jure corporations. It does not appear that they have not fully complied with all the requirements of the statutes of Illinois and Indiana, respectively, and are not fully authorized to do business within those states. The fact that in Illinois the local company has as yet no employés is not controlling. The domestic corporations are presumably subject to the control and supervision of the respective states of their creation. We are cited to no decision of the highest court of either Illinois or Indiana which would deny the right of the local companies to condemn under the facts stated, nor to any statute forbidding a foreign telegraph company to own rights of way and other property in those states. In the absence of such decisions or statutes, and without attempting to decide whether the right of the local corporations to con-

demn can be raised by appellant in the condemnation proceedings, or whether the assertion of that question belongs to the respective states alone, it seems clear that we would not be justified in overturning the exercise of discretion by the court below in preserving the existing status until the determination of the condemnation proceedings in the state courts, notwithstanding the dismissal by the trial courts of proceedings in those states. We are not impressed that the criticised arrangements between appellee and the Illinois and Indiana companies are in violation of section 3 of the federal act of July 24, 1866, as defeating the reserved right of the United States to purchase appellee's lines in Illinois and Indiana at an appraised value; for whatever rights appellee or the local companies have would seem subject to the act.

Among appellant's lines affected by the injunction are—

"a line * * * from Cincinnati, Ohio, through the state of Kentucky, * * * also a line * * * from St. Louis, Mo., running thence southeast to Evansville, Ind.," etc.

It appears that there are three miles of Cincinnati terminals and two miles of terminals in St. Louis. These two cities extend to the borders of the respective states so covered by the railroad and telegraph lines. The record is said to show that no condemnation proceedings have been taken in either Ohio or Missouri. The motion to dissolve the injunction does not mention this point, unless as contained in the voluminous pleadings and affidavits filed, to which the motion refers as its basis. The point is not referred to in the court's opinion on motion to dissolve. Appellant's brief makes no reference to its presentation except that reference is made to the fact of the inclusion of the terminals in the temporary injunction, and to the extent of these terminals as contained in the "statement showing miles of wire erected on Western Union poles on Louisville & Nashville right of way in the state of Missouri" and similarly in the state of Ohio. Why condemnation proceedings were not taken in Ohio and Missouri, or whether they are in contemplation, we are not informed by the briefs. The statutes of both Ohio and Missouri contain provisions for condemnation which on their face seem applicable. Whether the injunction is intended to cover these terminals is not entirely clear. In view of the situation stated, and having in mind the unitary character of the telegraph lines, we think we are not called upon to reverse the order complained of as to these two terminals, pending the determination of condemnation proceedings affecting the great bulk of the telegraph mileage. But what we have said is, of course, without prejudice to an application to the court below for a modification of the injunction, so far as it may pertain to Ohio and Missouri, provided condemnation proceedings are not brought in those states.

6. *The merits of the condemnation proceedings.*

In November, 1911 (which was after appellee gave notice of the termination of the contract of 1884), appellant amended its charter under the Kentucky statute so as to include the franchise of owning, constructing, operating, and maintaining telegraph and telephone lines on its railroad rights of way for public commercial business, as well

as for its own railway purposes. It accepted the federal act of June 23, 1879 (21 Stat. 31, c. 35), which provides for the doing of a telegraph business by railroad companies, and has filed affidavits herein to the effect that the entire width of the railroad rights of way is necessary to the proper and safe operation of its railroad, telegraph, telephone, and signal wires. It also shows by affidavit that after the institution of appellee's condemnation proceeding in the Kentucky county court, but before the new proceeding was taken in the federal district court, appellant's officers selected a location for its proposed telegraph and telephone poles and wires throughout substantially its entire railway lines, which is practically and in nearly all cases the precise location occupied by appellee's poles and wires. It claims the absolute right of such preferential location, and that such location is necessary to the beneficial use and operation of its proposed lines of wires. It has, of course, not been able to do anything in the way of construction. Other objections on the merits are urged. But we think all these questions are for the courts in which the various condemnation proceedings are pending. Many of them involve questions of fact which we cannot try out on affidavits, especially on a review of this character, involving the due exercise of discretion by the court below.

. The questions of law presented are of course ultimately for the courts having jurisdiction of the condemnation proceedings, and we could not properly anticipate their decision to the extent of overturning the exercise of discretion by the District Court unless where the facts and the law were such as to make this ultimate result certain, which is not the case here. It is true that the Supreme Court of Georgia (construing, as we do, the language of the opinion in connection with the syllabus prepared by the court) has held that the telegraph company could not condemn lines on both sides of the railway tracks, and that it is vested with no preference in the adoption of location, and that it should be enjoined from condemning a right of way selected in good faith by the railway company. See Western & Atlantic Ry. Co. v. Western Union Telegraph Co., 138 Ga. 420, 75 S. E. 471, 42 L. R. A. (N. S.) 225; and Louisville & Nashville Ry. Co. v. Same Defendant, 138 Ga. 432, 75 S. E. 477, the latter case being controlled by the rulings in the Western & Atlantic Case. That decision must be recognized as the law of Georgia, so far as it pertains to appellee's condemnation proceeding pending in that state. But we think it requires no modification of the injunction under review, because, first, appellee has no lines in Georgia on both sides of the railway tracks, and the District Court in the Kentucky condemnation proceedings took a different view of the question under the Kentucky statutes; and, second, the Georgia decision was on error to a final decree on the merits, dismissing the railway company's suit to restrain the condemnation proceedings; the case being remanded for another hearing. The questions of fact involved have thus not been decided by the Georgia courts adversely to appellee.

After a careful consideration of the case (including certain ob-

jections which we think do not require discussion), we are impressed that the discretion vested in the district court, with respect to the injunction complained of, was not improperly exercised. In so saying, we are not to be understood as expressing an opinion upon the ultimate merits of the controversy between the parties.

The order appealed from is affirmed with costs.