LOUISVILLE & N. R. CO. v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Sixth Circuit. June 4, 1918.)

No. 3136.

1. APPEAL AND ERROR ⬦⟳954(1)—REVIEW—INJUNCTIONS.
    The appellate court will overrule or reverse an order granting a preliminary injunction only when satisfied that there was error of law in the action of the trial court, or that upon the facts there was no reasonable field for discretionary action.
2. INJUNCTION ⬦⟳38—RESTRAINING INTERFERENCE WITH TELEGRAPH LINES PENDING CONDEMNATION.
    Where a telegraph company, which maintained interstate lines on a railroad right of way, terminated its agreement with the railroad company, and after the Alabama courts have adjudged that the telegraph company had no right to condemn an easement on that part of the railroad right of way located in Alabama, the federal courts for Kentucky will not, on the theory that the telegraph system was unitary and that the company had an easement over part of the right of way in Alabama, enjoin interference with the lines covered by the Alabama decision.
3. INJUNCTION ⬦⟳136(3)—PRELIMINARY INJUNCTION—ISSUANCE.
    Preliminary injunctions should not issue, unless a reasonably clear case of necessity and otherwise irreparable injury is made out.
4. INJUNCTION ⬦⟳38—PRELIMINARY INJUNCTION—CONTINUANCE.
    A telegraph company, which maintained interstate lines on a railroad right of way, terminated its agreement with the railroad company and

⬦⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sought to condemn easements in the several states, but condemnation was refused in Alabama. Held, that the federal court for Kentucky, which had enjoined the railroad company from interfering with the existing lines pending condemnation, will not continue the injunction as to the Alabama lines, particularly where the courts of that state granted an injunction covering telegraph lines on that part of the right of way wherein the telegraph company asserted an existing easement.

5. INJUNCTION ☞137(1)—PRELIMINARY INJUNCTION—GOVERNMENTAL AS-
SUMPTION OF CONTROL OF RAILROADS—TELEGRAPH LINE ON RIGHT OF
WAY.

Where a telegraph company, after terminating the arrangement under which it maintained lines on a railroad right of way, was denied right of condemnation in Alabama, held, that preliminary injunction against the railroad company's interference with telegraph lines will not be grant-ed, because the government has assumed control of railroads, etc., where the railroad company agreed not to take any action interfering with the telegraph system without governmental approval.

Appeal from the District Court of the United States for the West-ern District of Kentucky; Walter Evans, Judge.

Suit by the Western Union Telegraph Company against the Louis-ville & Nashville Railroad Company. From a decree denying a motion to dissolve an injunction, defendant appeals. Reversed in part and in part affirmed.

See, also, 201 Fed. 946.

For 27 years before 1911, the telegraph company had occupied the rail-road right of way, in several states, with a line of poles and wires, pursuant to a contract in the nature of a lease. Eventually the telegraph company exer-cised its elective right to terminate this contract. Failing in agreement upon terms for a renewal contract, the railroad company threatened to evict the telegraph company. The latter filed its bill in the court below, and procured a preliminary injunction restraining any interference with the existing pole and wire line, pending the result of condemnation proceedings which the telegraph company had begun in each of the different states. One of these states was Alabama. An appeal was taken to this court from the order awarding pre-liminary injunction, and the order was sustained. Louisville Co. v. Western Union Co., 207 Fed. 1, 124 C. C. A. 573. This court approved the general theory that equity should maintain the existing condition until there was op-portunity to prosecute to a conclusion any condemnation proceedings authorized by the statutes of the various states, and held that there was jurisdiction to enjoin such interference in other states, as well as in the districts of the state where the bill was filed. Accordingly any such interference in Alabama con-tinued to be prohibited by this injunction. The Kentucky condemnation pro-ceeding has been recently reviewed by this court. Louisville Co. v. Western Union Co., 249 Fed. 385, —— C. C. A. ——, opinion filed May 8, 1918. Further de-tails of the general situation need not be stated, but will be found recited in one or the other of these former opinions.

The condemnation proceeding in Alabama, after varying results, was ended by the decision of the Supreme Court of that state (Western Union Co. v. Louisville Co., 74 South. 946, 1006), holding that the power to condemn did not exist. As to any right claimed under the laws of the United States, this judgment was affirmed by the Supreme Court; and as to any other questions, certiorari was refused. Western Union Co. v. Louisville Co., 244 U. S. 649, 37 Sup. Ct. 743, 61 L. Ed. 1371. Thereupon the railroad company applied to the court below for dissolution of the existing injunction, so far as it affected proceedings in Alabama. By way of answer to this application, the telegraph company applied for and obtained leave to file an amended bill. From these amendments, and other sources, it appeared without dispute that the telegraph company occupied about 1,000 miles of the railroad company's right of way in Alabama; that as to about 600 miles the situation continued

as it had formerly appeared to be, and the telegraph company no longer claimed any right to occupy or any right to condemn; but as to the remaining approximately 400 miles the telegraph company claimed an easement for its poles and wires, resulting from condemnation proceedings prosecuted by the predecessor of the telegraph company against the predecessor of the railroad company. The telegraph company alleged that this easement had been so acquired "long prior to June 18, 1884," the date of the contract the termination of which in 1911 precipitated the controversy; that this easement over the 400 miles was partly on the same side of the tracks as the telegraph company's existing line and partly on the opposite side; that the easement had never been actually taken possession of and enjoyed, because this had not been necessary, but it had never been abandoned. It further appeared that the telegraph company had filed a bill against the railroad company in the proper trial court in Alabama to obtain a decree establishing such rights of easement and to enjoin the railroad company from denying the right to exercise the same and from interfering with existing lines until the railroad company should permit the telegraph company to remove the poles and wires from the existing line to the old easement line, and that an injunction to this effect, granted by the appropriate Alabama court, is now in force. This amended bill further alleges "that the easements so shown to belong to this complainant are a part of the system of complainant; that the remainder of the right of way of the railroad company in Alabama occupied by the complainant is likewise necessary to the operation of its general system." Upon these facts and allegations, the court below refused the motion to dissolve the injunction as to Alabama, and from the order of refusal, and the order permitting the filing of this amended bill, the railroad company appeals.

Henry L. Stone, Edward S. Jouett, and Helm Bruce, all of Louisville, Ky., for appellant.

Humphrey, Middleton & Humphrey and Richards & Harris, all of Louisville, Ky. (Albert T. Benedict, of New York City, of counsel), for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. This appeal must be governed by the settled rule that the appellate court will overrule or reverse an order granting a preliminary injunction only when satisfied that there was error of law in the action of the trial court, or that, upon the facts, there was no reasonable field for discretionary action. Louisville Co. v. Western Union Co., 207 Fed. 1, 4, 124 C. C. A. 573.

[2] 2. As to the 600 miles, it is practically conceded (and we suppose it was in the court below) that the injunction should be dissolved, unless the contrary result is to be justified by what counsel call the "unitary theory." The telegraph company's lines in Alabama along this railroad, while serving local and independent purposes, are at the same time an integral part of its general system extending over the country and exercising a quasi public function important to the general public interest. These Alabama lines act as roots or branches for trunks in other states, and serve as the main stem for branches and roots in other states. An injury to any one of these members is an injury to the whole; hence it is argued that, as incidental to the protection of that part of the system in Kentucky, the court should

also protect that part of the system in Alabama, pending the Kentucky condemnation, or indeed—we think the argument must go so far—until condemnation is finished in every state in which it may be attempted. This conclusion is thought to be supported by what this court said upon the former appeal, reported in 207 Fed. 8, 124 C. C. A. 573.

We do not so view that opinion, and we cannot accede to the position now taken. What we there said regarding the unitary character of the whole system had to do mainly with the jurisdiction of the District Court in Kentucky to order an injunction having extraterritorial effect, but also had some bearing on the question whether the discretion to enjoin was rightly exercised. However, the bill of complaint and the argument and our opinion all rested upon the existence of local right as an essential foundation. It was alleged, and at that time we were required to assume, that the telegraph company had the right to condemn in Georgia and in Alabama and in the other states named, as well as in Kentucky, and the relief granted was solely for the preservation of the body of the property in its existing condition until the legal right could be adjudicated in due course. Unless there had been a legal right to condemn in Kentucky, there would have been nothing for equity to protect in Kentucky; and the same thing is true of Alabama. It is self-evident that a defendant cannot be enjoined from a proposed act, unless that act will work an unlawful injury to a plaintiff; and it now appears that the telegraph company, not only has no interest, but claims none, in the 600 miles of right of way, and that the railroad company has the unquestioned right to take possession of its own property and evict the telegraph company therefrom. The harm resulting to the Kentucky lines from the destruction of the Alabama lines is damnum absque injuria. If I lease three fields from three several lessees, and operate them as one unitary farm, and the lease of one expires, its loss impairs the value of the other two; but that does not entitle me to keep it—not even until I can settle a dispute as to the lease of one of the others. We are clear that there is no foundation, in law or in fact, upon which the injunction as to the 600 miles can rest.

[3, 4] 3. There is a different situation as to the 400 miles. If the claim as to the old easement, set up in the amended bill, had been made in the original bill, it would then have afforded a basis, both of jurisdiction and of discretion, for the award, of a temporary injunction, not different, except in degree, from the basis given by the condemnation suit. This was not done. The telegraph company planted its request for equitable assistance solely on its alleged right to condemn. This right to condemn rested upon the existence of necessity, to be proved or to be presumed. As to that part of the Alabama right of way where the old easement was on the same side as the existing line (sought to be condemned), it is not easy to see how there was any necessity whatever. As to that portion where the easement lay on the other side of the tracks, the necessity, for condemnation was, to say the least, less probable, if there was an existing easement, than if there was none. For five years the telegraph company prosecuted and maintained this litigation in the court below, and maintained and had

the benefit of its preliminary injunction, upon the faith of its express and implied representations to the court below that this condemnation was necessary in order to prevent irreparable injury. Though the substantial effect of this proceeding was to trifle with the court and its process, we do not intend to intimate that this course of conduct was for the purpose of misleading the court; it is to be presumed that counsel had what seemed to them to be good reasons for not disclosing and relying upon the easement in question; nor do we intend to decide that the prosecution of the condemnation suit in Alabama and of this equity suit in Kentucky have been inconsistent with the easement now alleged, or constitute an abandonment of or an estoppel against the easement right; those questions are for the Alabama courts to decide. We go no further than to say that this reliance upon the theory of condemnation for so many years, and this resort to the theory of antecedent easement only after the possibilities of the other were exhausted, do not incline a court of equity to grant discretionary favor; and only a clear showing of a probable right in serious jeopardy and of no other available remedy could justify the granting or the maintenance of an injunction based on such a belated prayer.

Not only is the usual rule to be observed that preliminary injunctions should not issue unless a reasonably clear case of necessity and otherwise irreparable injury is made out, but this case makes the rule especially appropriate. It is proposed here to issue (or, what is the same thing, to refuse to dissolve) an injunction which extends beyond the territorial limits of the court, which restrains the parties from proceeding in another state as they otherwise might, and which, in substantial effect, prevents the courts of another state from awarding and executing relief with regard to property in that state as they might otherwise do. To this consideration is to be added the fact that the telegraph company has actually applied for and obtained from the proper Alabama court the complete and full measure of temporary injunctional protection which it is asking in this case from the court below. Not only does this fail to indicate that the injunction from the court below is necessary to prevent irreparable injury, but it rather shows that the injunction here demanded will be of no use whatever, unless the courts of the state where the property is situated decide that the telegraph company has no rights which entitle it to such protection.[1]

When we start with the consideration that, by withholding for five years what it now concedes is its only claim of right while prosecuting the case on other claims, the telegraph company has all but closed the door to its present appeal for the aid of equity, and then further observe that it is asking the court to go to the very limit of jurisdiction in proceeding extraterritorially and in affecting the courts of another state, and then observe still further that it is already fully protected

[1] Upon the former appeal, it appeared that a small fraction of the Alabama lines was protected by an Alabama injunction; but the matter was comparatively negligible, and we found no occasion to consider the effect of an Alabama injunction covering the whole remaining field of controversy.

by the action of the courts of that other state against the injury which it now anticipates, we are satisfied that there is no sufficient basis upon which longer to support the injunction even as to the 400 miles.

4. We do not find ourselves embarrassed, in reaching this conclusion, by the rule to which we referred at the outset that an appellate court will not disturb the action of a trial court, except in case of error of law, or so serious a misapprehension of facts as to be of similar effect. A careful reading of the thorough opinion of the trial judge indicates to us that his conclusion to maintain the injunction as to the entire 1,000 miles is based essentially upon that construction of our former opinion which led him to think that the unitary character of the telegraph system was of itself enough to justify protecting the whole system, without regard to the existence of local right; and this construction we think erroneous. We further observe that the District Judge considered the amended bill to show that, since the decision of the Alabama Supreme Court had determined "the law respecting condemnation, the plaintiff had discovered that it for many years had had and now has" the right of easement which, by its amended bill, it is asserting. We cannot find in the bill, nor in the briefs of counsel, any assertion that these easement rights were not fully known at the time of filing the original bill and ever since; and it is apparent that the supposition that the easement had been newly discovered, instead of having been voluntarily withheld, would give a sufficiently different color to the claim of the telegraph company, so that this might have been the turning point in the action of the District Judge.

[5] 5. Pending this controversy as to the rights of the parties, there have developed a governmental assumption of railroad control and an overwhelming public necessity that the operation of the telegraph system as a whole through the state of Alabama should not be embarrassed. We do not see that these things make the slightest difference as to the propriety of maintaining or dissolving this injunction. It appears that the Secretary of War has requested that nothing should be done to interfere with the operation of the telegraph system until he approves, and the railroad company promises full observance of this request. The existing injunction, as to lines in Alabama, should be dissolved, without prejudice as to the easement claimed by the telegraph company, and with the proviso that the railroad company should do nothing interfering with existing lines or their use by the telegraph company until the Secretary of War consents thereto, or until after 30 days' notice to the Secretary of War and lack of objection by him.

6. As the telegraph company has had ample time, since the condemnation question was finally decided in the Supreme Court of Alabama, within which to move its lines, we observe no reason why it should receive further protection from the court below for that purpose, or why it may not get from the Alabama courts whatever similar protection may be proper as incidental to the easement controversy; but we do not decide this matter, and it will not be inconsistent with the mandate to go down, if the District Court shall think proper to enjoin interference as to the 600 miles, or the 400 miles, or both, for the time reasonably necessary for the telegraph company, acting diligently and

in good faith, to establish its lines elsewhere than on the railroad right of way.

The order below, refusing to dissolve the injunction as to Alabama, is reversed, and an order will be entered in accordance with this opinion. The order granting leave to file the amended bill was discretionary, and is affirmed. Appellant will recover the costs of this court.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes